**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT ILLINOIS**

| | |
|---|---|
| LERON LEWIS, JR,<br><br>Plaintiff,<br><br>v.<br><br>HIRSCHBACH MOTOR LINES, INC. and ERIC JEROME CAMPBELL, SR.,<br><br>Defendants. | No. 3:20-CV-1355-RJD<br>Lead Case |
| BRANDON JAMAL MOFFETT,<br><br>Plaintiff,<br><br>v.<br><br>HIRSCHBACH MOTOR LINES, INC. and ERIC JEROME CAMPBELL, SR.,<br><br>Defendants. | No. 3:21-CV-0001-RJD<br>Consolidated with 20 CV 1355 |
| HIRSCHBACH MOTOR LINES, INC. and ERIC JEROME CAMPBELL, SR.,<br><br>Defendants/Third Party Plaintiffs,<br><br>v.<br><br>BRANDON JAMAL MOFFETT, LERON LEWIS, JR., DATWAY LLC, MOTOR CARRIER CONSULTANTS, LLC. J.B. HUNT TRANSPORT, INC., MCGRIFF TIRE CO., INC., NAVISTAR, INC., BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, and BIG TEX TRAILER MANUFACTURING, LLC,<br><br>Third Party Defendants, | |

**DEFENDANTS/THIRD-PARTY PLAINTIFFS, HIRSCHBACH MOTOR LINES AND ERIC JEROME CAMPBELL, SR.'S THIRD-PARTY COMPLAINT FOR CONTRIBUTION AGAINST BRANDON JAMAL MOFFETT, LERON LEWIS, JR., DATWAY LLC, MOTOR CARRIER**

**CONSULTANTS, INC., J.B. HUNT TRANSPORT, INC., MCGRIFF TIRE CO., INC., NAVISTAR, INC., BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, AND BIG TEX TRAILER MANUFACTURING, LLC.**

NOW COME Defendants/Third-Party Plaintiffs, HIRSCHBACH MOTOR LINES, INC. and ERIC JEROME CAMPBELL, SR., by MATTHEW S. HEFFLEFINGER and DEVIN M. TASEFF of HEYL, ROYSTER, VOELKER & ALLEN, P.C., pursuant to Federal Rule of Civil Procedure 14, and for their Third-Party Complaint against Brandon Jamal Moffett, Leron Lewis, Jr., DATWAY LLC, Motor Carrier Consultants, Inc., J.B. Hunt Transport, Inc., McGriff Tire Co., Inc., Navistar, Inc., Bendix Commercial Vehicle Systems LLC, and Big Tex Trailer Manufacturing, LLC., state as follows:

**COUNTS**

- **COUNT I:** **NEGLIGENCE AND NEGLIGENCE PER SE AGAINST LEWIS IN CASE NO. 3:21-CV-0001 (CONSOLIDATED WITH 3:20-CV-1355)**
- **COUNT II:** **NEGLIGENCE AND NEGLIGENCE PER SE AGAINST MOFFETT IN (CASE NO. 3:20-CV-1355)**
- **COUNT III:** ***RESPONDEAT SUPERIOR*/VICARIOUS LIABILITY AGAINST DATWAY**
- **COUNT IV:** **NEGLIGENT HIRING, RETENTION, AND SUPERVISION OF MOFFETT AND LEWIS AGAINST DATWAY**
- **COUNT V:** **NEGLIGENCE AND NEGLIGENCE PER SE AGAINST DATWAY**
- **COUNT VI:** **NEGLIGENCE AGAINST MOTOR CARRIER CONSULTANTS**
- **COUNT VII:** **JOINT ENTERPRISE AGAINST J.B. HUNT**
- **COUNT VIII:** ***RESPONDEAT SUPERIOR*/VICARIOUS LIABILITY AGAINST J.B. HUNT**
- **COUNT IX:** **NEGLIGENT HIRING RETENTION, AND SUPERVISION OF DATWAY AGAINST J.B. HUNT**
- **COUNT X:** **MCGRIFF TIRE CO., INC. (NEGLIGENCE AND NEGLIGENCE PER SE)**
- **COUNT XI:** **BENDIX COMMERCIAL VEHICLE SYSTEMS LLC AND NAVISTAR, INC. (NEGLIGENCE)**

- **COUNT XII: BENDIX COMMERCIAL VEHICLE SYSTEMS LLC AND NAVISTAR, INC. (STRICT TORT LIABILITY)**
- **COUNT XIII: BIG TEX TRAILER MANUFACTURING, LLC. (NEGLIGENCE)**
- **COUNT XIV: BIG TEX TRAILER MANUFACTURING, LLC. (STRICT TORT LIABILITY)**

## PARTIES

1. On information and belief, DATWAY LLC (hereby "Datway") is a corporation organized under the laws of the State of Alabama, with its principal place of business in the State of Alabama.

2. On information and belief, Brandon Jamal Moffett (hereinafter "Moffett") is a citizen of the State of Alabama.

3. On information and belief, Leron Lewis, Jr. (hereinafter "Lewis") is a citizen of the State of Alabama.

4. On information and belief, Eric Jerome Campbell, Sr. (hereinafter "Campbell") is a citizen of the State of Florida.

5. Motor Carrier Consultants, Inc. (hereinafter "Motor Carrier Consultants") is a corporation organized under the laws of the State of Alabama, with its principal place of business in the State of Alabama.

6. J.B. Hunt Transport, Inc. (hereinafter "JB Hunt") is a corporation organized under the laws of the State of Georgia, with its principal place of business in the State of Arkansas.

7. McGriff Tire Co., Inc. (hereinafter "McGriff Tire") is a corporation organized under the laws of the State of Alabama, with in principal place of business in the State of Alabama.

8. Navistar, Inc. (hereinafter "Navistar") is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Illinois.

9. Bendix Commercial Vehicle Systems LLC (hereinafter "Bendix") is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Ohio.

10. Hirschbach Motor Lines, Inc. (hereinafter "Hirschbach") is a corporation organized under the laws of the State of Iowa, with its principal place of business in the State of Iowa.

11. On information and belief, Big Tex Trailer Manufacturing, LLC (hereinafter "Big Tex") is a limited liability company organized under the laws of the State of Texas, with its principal place of business in the State of Texas.

## JURISDICTION STATEMENT

12. Pursuant to 28 U.S. Code § 1332, this Court has proper jurisdiction because all parties are diverse and the controversy exceeds seventy-five thousand dollars, exclusive of interest and costs.

## VENUE

13. Venue is proper in this Court pursuant to 28 U.S. Code § 1391(b)(2), as a substantial part of the events or omissions giving rise to the subject accident occurred therein.

## FACTS COMMON TO ALL COUNTS

14. On December 21, 2020, Plaintiff Lewis filed a Complaint naming Hirschbach and Campbell as Defendants, Case No. 3:20-cv-1355.

15. Lewis' Complaint alleges negligence against Campbell (Count I) for operating the truck in a negligence manner, negligence against Hirschbach (Count II) under the *respondeat*

*superior* doctrine, and direct negligence against Hirschbach (Count III) for failing to act reasonably in hiring, training, and retaining Campbell. (3:20-cv-1355, Doc. 1)

16. On January 4, 2021, Plaintiff Moffett filed a Complaint naming Hirschbach and Campbell as Defendants, Case No. 3:21-cv-0001. This case has since been consolidated with Case No. 3:20-cv-1355.

17. Moffett's Complaint alleges negligence and negligence *per se* against Defendant Campbell (Count I) for operating his truck in a dangerous and negligent manner, negligence against Hirschbach (Count II) under the *respondeat superior*. (3:21-cv-00001, Doc. 1).

18. Defendant/Third-Party Plaintiffs Hirschbach and Campbell have filed Answers denying all material allegations. Hirschbach and Campbell maintain these denials. This Third-Party Complaint for Contribution is brought pursuant to the Illinois Joint Tortfeasor Contribution Act 740 ILCS 100/*et seq.* and is alleged in the alternative to those denials.

19. On December 13, 2020, and for at least six days prior thereto, Lewis and/or Moffett operated a 2017 Chevrolet Silverado 3500 Series truck (hereinafter "vehicle") and a 2019 Big Tex "Gooseneck" Trailer (hereinafter "trailer") near-continuously and engaged in "team driving" without a sleeper berth in compliance with 49 CFR §393.76.

20. With no area in the vehicle permitted as a sleeper berth, any time a commercial vehicle is moving is considered 'on-duty' time for both Lewis and/or Moffett per 49 CFR §395.2.

21. On or about December 13, 2020, and during the six (6) days prior thereto Lewis and Moffett had each accumulated more than one-hundred (100) 'on-duty' hours.

22. During the aforesaid time period, Lewis and Moffett routinely and knowingly falsified their Driver Record of Duty Status by logging themselves as "off-duty" when the vehicle was moving and lacked a sleeper berth in compliance with 49 CFR §393.76.

23. On or about December 13, 2020, Lewis and Moffett operated the vehicle and trailer on a public highway known as southbound I-57, at or near milepost 65.2, in an active construction zone, in Browning Township, Franklin County, Illinois.

24. On or about the aforesaid time, Lewis and Moffett were utilizing the vehicle and trailer for the purpose of hauling freight in interstate commerce and in the course and scope of their employment with Datway.

25. On or about the aforesaid time, Lewis and Moffett negligently operated the vehicle and trailer such that they were illegally parked and occupying the right lane of travel of southbound I-57.

26. On or about the aforesaid time, Campbell was operating a 2019 International tractor in the right lane of southbound I-57, and collided with the rear end of the trailer illegally parked and occupying said lane.

27. On information and belief, at all relevant times herein, Datway was a Motor Carrier, and subject to the rules and regulations of the United States Department of Transportation and the Federal Motor Carrier Safety Administration, codified in 49 U.S. Code §§ 300-399 and related parts.

28. On information and belief, at all relevant times herein, Moffett and Lewis were subject to the rules and regulations of the United States Department of Transportation and the Federal Motor Carrier Safety Administration, codified in 49 U.S. Code §§ 300-399 and related parts

29. On October 31, 2020, Moffett's submitted a written Driver's Application for Employment as a commercial truck driver with Datway, in which Moffett represented that he had a valid Commercial Driver's License (hereby "CDL") that expired on November 27, 2020.

30. On October 31, 2020, Lewis submitted a Driver's Application for Employment as a commercial truck driver with Datway, in which Lewis represented that had a CDL that expired on November 22, 2020.

31. Datway subsequently permitted both Lewis and Moffett to operate as commercial truck drivers pursuant to its Department of Transportation operating authority.

32. Upon information and belief, neither Lewis nor Moffett renewed their CDLs on or prior to December 13, 2020.

33. Upon information and belief, neither Moffett nor Lewis held valid CDLs when they applied to work with Datway, and at all relevant times thereafter.

34. At all relevant times, Moffett owned the vehicle and leased it to Datway for the purpose of hauling freight in interstate commerce.

35. Upon information and belief, there was no substantial modifications to the vehicle between when Moffett purchased it and the accident.

36. At or near the time of the accident, and at all relevant times prior thereto, the brake systems of the trailer were defective and/or malfunctioning.

37. Upon information and belief, on or about December 13, 2020, and at all relevant times prior thereto, Lewis and Moffett were operating the vehicle and/or "on duty" under the influence of a controlled substance in violation of 49 CFR § 392.4.

38. Both Moffett and Lewis have not received Worker Compensation benefits from the State of Alabama or the State of Illinois.

39. Both Moffett and Lewis have not filed a Worker Compensation claim in either the State of Alabama or the State of Illinois.

40. Datway has not paid into Worker Compensation insurance for either Moffett or Lewis.

41. Datway has not paid any Worker Compensation benefits to either Moffett or Lewis.

**COUNT I: NEGLIGENCE AND NEGLIGENCE PER SE AGAINST LEWIS IN CASE NO. 3:21-CV-0001 (CONSOLIDATED WITH 3:20-CV-1355)**

42. Hirschbach and Campbell incorporate by reference Paragraphs 1 through 42 as if the same were fully set forth herein.

43. At said time and place, it was the duty of Lewis to operate, maintain, and/or control the vehicle in a manner in accordance with the Federal Motor Carrier Safety Regulations, the Illinois Rules of the Road and as not to negligently cause an accident and injury to himself and other persons lawfully on the public way and road.

44. On information and belief, and notwithstanding the foregoing duty, Lewis was negligent in one or more of the following ways:

a) Operated a commercial vehicle with an invalid and/or expired CDL or otherwise was not qualified to do;

b) Failed to drive the vehicle and trailer to a point of safety in an open area on the left side of I-57, or proceed to the exits at West Frankfort (MP 64.6, .6 miles away) or Johnston City (MP 58.9, 6.3 miles away) prior to stopping;

c) Illegally parked or permitted the vehicle and trailer to be illegally parked in the right lane on I-57;

d) Failed to adhere to industry rules and regulations for driving a commercial vehicle so as to avoid obstructing a lane of travel reserved for traffic;

e) Operated a vehicle while under the influence of drugs, intoxicating substances, or compounds;

f) Operated a commercial motor vehicle while his ability or alertness is so impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate a motor vehicle;

g) Failed to engage in appropriate pre-trip inspections on or before the accident date such that he did not determine that the condition of the vehicle and/or trailer subjected Plaintiffs and other motorists to injury while traveling upon public roadways;

h) Failed to engage in an appropriate post-trip inspections on or before the accident date which would identify any defect or deficiency such that no corrective action was taken to the vehicle and/or trailer, including traveling upon public roadways with defective brakes;

i) Failed to properly maintain vehicle;

j) Failed to properly maintain trailer;

k) Failing to adhere to industry standards for driving a commercial motor vehicle in a construction zone;

l) Failed to place a warning device behind the vehicle and trailer to warn other motorists of the illegally parked vehicle and trailer blocking a lane of travel reserved for traffic; and,

m) Was otherwise careless or negligent.

45. On information and belief, and notwithstanding the foregoing duty, Lewis was negligent *per se* in one or more of the following ways:

a) Operated a commercial motor vehicle with an invalid and/or expired CDL or otherwise was not qualified to do so in violation of Federal Motor Carrier Safety Regulation 49 CFR §391.11;

b) Violated Hours of Service regulations such that he had over 100 ‘on-duty’ hours six days prior to the accident in violation of 49 CFR §395;

c) Operated the vehicle with knowingly false reports in connection with his Hours of Service and Record of Duty Status in violation of 49 CFR §395.8(e);

d) Illegally parked or improperly permitted his vehicle to be illegally parked in the right lane of I-57 pursuant to 625 ILCS 5/11-1303(a);

e) Operated his vehicle while under the influence of drugs, intoxicating substances, or compounds in violation of Section 11-501 of the Illinois Vehicle Code, 625 ILCS 5/11-501;

f) Operated his vehicle while under the influence of drugs or substances which rendered him incapable of safely operating a motor vehicle, in violation of Federal Motor Carrier Safety Regulation 49 CFR §392.4;

g) Reported for duty or remained on duty requiring the performance of safety sensitive functions when the driver used any drug or controlled substance in violation of 49 CFR §382.213;

h) Operated his commercial motor vehicle while his ability or alertness is so impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate a motor vehicle in violation of Federal Motor Carrier Safety Regulation 49 CFR 392.3;

i) Failed to operate his vehicle in violation of 49 CFR §392.2 by parking the vehicle in a lane reserved for travel on I-57;

j) Failed to engage in an appropriate pre-trip inspection on or before the accident date such that he did not determine that the trailer had defective brakes such that it subjected them and other motorists to injury while traveling upon public roadways in violation of 49 CFR §§396.13, 392.7;

k) Failed to engage in an appropriate post-trip inspections on or before the accident date which would identify any defect or deficiency such that no corrective action was taken to the trailer, which was traveling upon public roadways with defective brakes in violation of 49 CFR §§396.11, 392.7;

l) Failed to properly maintain, or ensure the proper maintenance of properly performing brakes on the vehicle and trailer in violation of 49 CFR §396.3.a;

m) Operated a vehicle in such a condition as to likely cause an accident or breakdown in violation of 49 CFR §396.7(a);

n) Operated the trailer without brakes acting on all wheels in violation of 49 CFR §§393.40, 393.42, 393.48, and 393.52;

o) Failed to utilize flares or other warning devices in violation of 625 ILCS 5/12-702 and/or 49 CFR §392.22; and,

p) Failed to adhere to certain rules and regulations codified in 49 CFR §300 *et seq*.

46. As a direct and proximate result of one or more of the foregoing negligent acts, Moffett claims injury and damages.

47. As a result thereof, Hirschbach and Campbell are entitled to damages resulting from Lewis' negligence.

48. At the time Moffett was allegedly injured, there was in full force and effect in the State of Illinois a statute known as the Joint Tortfeasors Contribution Act, 740 ILCS 100/100.01 *et seq*., which provides contribution between and among joint tortfeasors.

49. If Hirschbach and/or Campbell should be found liable to Moffett for the damages alleged in his respective Complaint, which both Hirschbach and Campbell have denied, and continue to deny, it will be due to the negligent acts and/or omissions of Lewis.

WHEREFORE, Defendants/Third-Party Plaintiffs, ERIC JEROME CAMPBELL, SR. and HIRSCHBACH MOTOR LINES, INC., respectfully request that if Plaintiff Moffett recovers a judgement against them, then they be granted judgement against Plaintiff/Third-Party Defendant LERON LEWIS, JR., in an amount commensurate with Lewis' *pro rata* share of fault in causing the injuries and damages allegedly suffered by Plaintiff, BRANDON JAMAL MOFFETT, and for such further relief as this Court deems appropriate.

**DEFENDANTS/THIRD PARTY PLAINTIFFS DEMAND TRIAL BY JURY**

## COUNT II: NEGLIGENCE AND NEGLIGENCE PER SE AGAINST MOFFETT IN CASE NO. 3:20-CV-1355

50. Hirschbach and Campbell incorporate by reference Paragraphs 1 through 50 as if the same were fully set forth herein.

51. Plaintiff Moffett owned the vehicle and trailer.

52. At said time and place, it was the duty of Moffett to operate, maintain, and/or control the vehicle in a manner in accordance with the Federal Motor Carrier Safety Regulations, the Illinois Rules of the Road and as not to negligently cause an accident and injury to himself and other persons lawfully on the public way and road.

53. On information and belief, and notwithstanding the foregoing duty, Moffett was negligent in one or more of the following ways:

a) Operated a commercial vehicle with an invalid and/or expired CDL or otherwise was not qualified to do, and/or allowed the vehicle to be operated by an individual who had an invalid and/or expired CDL or otherwise was not qualified to do so;

b) Failed to drive the vehicle and trailer to a point of safety in an open area on the left side of I-57, or proceed to the exits at West Frankfort (MP 64.6, .6 miles away) or Johnston City (MP 58.9, 6.3 miles away) prior to stopping;

c) Illegally parked or permitted the vehicle to be illegally parked in the right lane on I-57;

d) Failed to adhere to industry rules and regulations for driving a commercial vehicle so as to avoid obstructing a lane of travel reserved for traffic;

e) Operated a vehicle while under the influence of drugs, intoxicating substances, or compounds, and/or allowed the vehicle to be operated by an individual under the influence of drugs, intoxicating substances, or compounds;

f) Operated a commercial motor vehicle while his ability or alertness is so impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate a motor vehicle, and/or allowed the vehicle to be operated by an individual while their ability or alertness is o impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to continue to operate a motor vehicle;

g) Failed to engage in appropriate pre-trip inspections on or before the accident date such that he did not determine that the condition of the vehicle and/or trailer subjected Plaintiffs and other motorists to injury while traveling upon public roadways;

h) Failed to engage in an appropriate post-trip inspections on or before the accident date which would identify any defect or deficiency such that no corrective action was taken to the vehicle and/or trailer, including traveling upon public roadways with defective brakes;

i) Failed to properly maintain vehicle;

j) Failed to properly maintain trailer;

k) Failing to adhere to industry standards for driving a commercial motor vehicle in a construction zone;

l) Failed to place a warning device behind the vehicle and trailer to warn other motorists of the illegally parked vehicle and trailer blocking a lane of travel reserved for traffic; and,

m) Was otherwise careless or negligent.

54. On information and belief, and notwithstanding the foregoing duty, Moffett was negligent *per se* in one or more of the following ways:

a) Operated a commercial motor vehicle with an invalid and/or expired CDL or otherwise was not qualified to do so, and/or allowed the vehicle to be operated by an individual who had an invalid and/or expired CDL or otherwise was not qualified to do so in violation of Federal Motor Carrier Safety Regulation 49 CFR §391.11;

b) Violated Hours of Service regulations such that he had over 100 'on-duty' hours six days prior to the accident in violation of 49 CFR §395;

c) Operated the vehicle with knowingly false reports in connection with his Hours of Service and Record of Duty Status, and/or allowing the vehicle to be operated by an individual with knowingly false reports in connection with their Hours of Service and Record of Duty Status in violation of 49 CFR §395.8(e);

d) Illegally parked or improperly permitted his vehicle to be illegally parked in the right lane of I-57 pursuant to 625 ILCS 5/11-1303(a);

e) Operated his vehicle while under the influence of drugs, intoxicating substances, or compounds, and/or allowed the vehicle to be operated by and individual while under the influence of drugs, intoxicating substances or compounds in violation of Section 11-501 of the Illinois Vehicle Code, 625 ILCS 5/11-501;

f) Operated his vehicle while under the influence of drugs or substances which rendered him incapable of safely operating a motor vehicle, and/or allowed the vehicle to be operated by an individual under the influence of drugs or substances

which rendered them incapable of safely operating a motor vehicle in violation of Federal Motor Carrier Safety Regulation 49 CFR §392.4;

g) Reported for duty or remained on duty requiring the performance of safety sensitive functions when the driver used any drug or controlled substance, and/or allowed the driver to remain on duty when the driver used a drug or controlled substance in violation of 49 CFR §382.213;

h) Operated his commercial motor vehicle while his ability or alertness is so impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate a motor vehicle, and/or allowed the vehicle to be operated by an individual whose alertness is so impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate a motor vehicle in violation of Federal Motor Carrier Safety Regulation 49 CFR 392.3;

i) Failed to operate his vehicle in violation of 49 CFR §392.2 by parking the vehicle, or allowing the vehicle to be illegally parked, in a lane reserved for travel on I-57;

j) Failed to engage in an appropriate pre-trip inspection on or before the accident date such that he did not determine that the trailer had defective brakes such that it subjected them and other motorists to injury while traveling upon public roadways in violation of 49 CFR §§396.13, 392.7;

k) Failed to engage in an appropriate post-trip inspections on or before the accident date which would identify any defect or deficiency such that no corrective action was taken to the trailer, which was traveling upon public roadways with defective brakes in violation of 49 CFR §§396.11, 392.7;

l) Failed to properly maintain, or ensure the proper maintenance of properly performing brakes on the vehicle and trailer in violation of 49 CFR §396.3.a;

m) Operated a vehicle in such a condition as to likely cause an accident or breakdown in violation of 49 CFR §396.7(a);

n) Operated the trailer without brakes acting on all wheels in violation of 49 CFR §§393.40, 393.42, 393.48, and 393.52;

o) Failed to utilize flares or other warning devices in violation of 625 ILCS 5/12-702 and/or 49 CFR §392.22; and,

p) Failed to adhere to certain rules and regulations codified in 49 CFR §300 *et seq*.

55. As a direct and proximate result of one or more of the foregoing negligent acts, Moffett claims injury and damages.

56. As a result thereof, Hirschbach and Campbell are entitled to damages resulting from Moffett's negligence.

57. At the time Lewis was allegedly injured, there was in full force and effect in the State of Illinois a statute known as the Joint Tortfeasors Contribution Act, 740 ILCS 100/100.01 *et seq*., which provides contribution between and among joint tortfeasors.

58. If Hirschbach and/or Campbell should be found liable to Lewis for the damages alleged in his respective Complaint, which both Hirschbach and Campbell have denied, and continue to deny, it will be due to the negligent acts and/or omissions of Moffett.

WHEREFORE, Defendants/Third-Party Plaintiffs, ERIC JEROME CAMPBELL, SR. and HIRSCHBACH MOTOR LINES, INC., respectfully request that if Plaintiff, BRANDON JAMAL MOFFETT, recovers a judgement against them, then they be granted judgement against Plaintiff/Third-Party Defendant Moffett, in an amount commensurate with Moffett's *pro rata* share of fault in causing the injuries and damages allegedly suffered by Plaintiff, LERON LEWIS, JR., and for such further relief as this Court deems appropriate.

**DEFENDANTS/THIRD PARTY PLAINTIFFS DEMAND TRIAL BY JURY**

**COUNT III: *RESPONDEAT SUPERIOR*/VICARIOUS LIABILITY AGAINST DATWAY**

59. Hirschbach and Campbell incorporate by reference Paragraphs 1 through 59 as if the same were fully set forth herein.

60. Moffett and Lewis were acting within the course and scope of their employment with Datway at the time of the accident.

61. At the aforesaid time and place, it was the duty of Datway, individually, and by and through its duly authorized agent(s), servant(s), and/or employee(s), Lewis and/or Moffett,

to exercise ordinary care in the ownership, possession, and control of the vehicle and trailer so as to not cause injury to other motorists on southbound I-57, including but not limited to Campbell, Lewis and/or Moffett.

62. Notwithstanding the aforesaid duty, Datway, individually, and by and through its duly authorized agent(s), servant(s), and/or employee(s), Lewis and/or Moffett, negligently and carelessly committed one or more of the following wrongful acts or omissions:

a) Operated a commercial vehicle with an invalid and/or expired CDL or otherwise was not qualified to do, and/or allowed the vehicle to be operated by an individual who had an invalid and/or expired CDL or otherwise was not qualified to do so;

b) Failed to drive the vehicle and trailer to a point of safety in an open area on the left side of I-57, or proceed to the exits at West Frankfort (MP 64.6, .6 miles away) or Johnston City (MP 58.9, 6.3 miles away) prior to stopping;

c) Illegally parked, or permitted the vehicle to be illegally parked, in the right lane on I-57;

d) Failed to adhere to industry rules and regulations for driving a commercial vehicle so as to avoid obstructing a lane of travel reserved for traffic;

e) Operated a vehicle while under the influence of drugs, intoxicating substances, or compounds, and/or allowed the vehicle to be operated by an individual under the influence of drugs, intoxicating substances, or compounds;

f) Operated a commercial motor vehicle while his ability or alertness is so impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate a motor vehicle, and/or allowed the vehicle to be operated by an individual while their ability or alertness is o impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to continue to operate a motor vehicle;

g) Failed to engage in appropriate pre-trip inspections on or before the accident date such that he did not determine that the condition of the vehicle and/or trailer subjected Plaintiffs and other motorists to injury while traveling upon public roadways;

h) Failed to engage in an appropriate post-trip inspections on or before the accident date which would identify any defect or deficiency such that no corrective action was taken to the vehicle and/or trailer, including traveling upon public roadways with defective brakes;

i) Failed to properly maintain vehicle;

j) Failed to properly maintain trailer;

k) Failing to adhere to industry standards for driving a commercial motor vehicle in a construction zone;

l) Failed to place a warning device behind the vehicle and trailer to warn other motorists of the illegally parked vehicle and trailer blocking a lane of travel reserved for traffic; and,

m) Were otherwise careless or negligent.

63. Notwithstanding the aforesaid duty, Datway, individually, and by and through its duly authorized agent(s), servant(s), and/or employee(s), Lewis and/or Moffett, was negligent *per se* in one or more of the following ways:

a) Operated a commercial motor vehicle with an invalid and/or expired CDL or otherwise was not qualified to do so, and/or allowed the vehicle to be operated by an individual who had an invalid and/or expired CDL or otherwise was not qualified to do so in violation of Federal Motor Carrier Safety Regulation 49 CFR §391.11;

b) Violated Hours of Service regulations such that he had over 100 'on-duty' hours six days prior to the accident in violation of 49 CFR §395;

c) Operated the vehicle with knowingly false reports in connection with his Hours of Service and Record of Duty Status, and/or allowing the vehicle to be operated by an individual with knowingly false reports in connection with their Hours of Service and Record of Duty Status in violation of 49 CFR §395.8(e);

d) Illegally parked or improperly permitted his vehicle to be illegally parked in the right lane of I-57 pursuant to 625 ILCS 5/11-1303(a);

e) Operated his vehicle while under the influence of drugs, intoxicating substances, or compounds, and/or allowed the vehicle to be operated by and individual while under the influence of drugs, intoxicating substances or compounds in violation of Section 11-501 of the Illinois Vehicle Code, 625 ILCS 5/11-501;

f) Operated his vehicle while under the influence of drugs or substances which rendered him incapable of safely operating a motor vehicle, and/or allowed the vehicle to be operated by an individual under the influence of drugs or substances which rendered them incapable of safely operating a motor vehicle in violation of Federal Motor Carrier Safety Regulation 49 CFR §392.4;

g) Reported for duty or remained on duty requiring the performance of safety sensitive functions when the driver used any drug or controlled substance, and/or allowed the driver to remain on duty when the driver used a drug or controlled substance in violation of 49 CFR §382.213;

h) Operated his commercial motor vehicle while his ability or alertness is so impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate a motor vehicle, and/or allowed the vehicle to be operated by an individual whose alertness is so impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate a motor vehicle in violation of Federal Motor Carrier Safety Regulation 49 CFR 392.3;

i) Failed to operate his vehicle in violation of 49 CFR §392.2 by parking the vehicle, or allowing the vehicle to be illegally parked, in a lane reserved for travel on I-57;

j) Failed to engage in an appropriate pre-trip inspection on or before the accident date such that he did not determine that the trailer had defective brakes such that it subjected them and other motorists to injury while traveling upon public roadways in violation of 49 CFR §§396.13, 392.7;

k) Failed to engage in an appropriate post-trip inspections on or before the accident date which would identify any defect or deficiency such that no corrective action was taken to the trailer, which was traveling upon public roadways with defective brakes in violation of 49 CFR §§396.11, 392.7;

l) Failed to properly maintain, or ensure the proper maintenance of properly performing brakes on the vehicle and trailer in violation of 49 CFR §396.3.a;

m) Operated a vehicle in such a condition as to likely cause an accident or breakdown in violation of 49 CFR §396.7(a);

n) Operated the trailer without brakes acting on all wheels in violation of 49 CFR §§393.40, 393.42, 393.48, and 393.52;

o) Failed to utilize flares or other warning devices in violation of 625 ILCS 5/12-702 and/or 49 CFR §392.22 and,

p) Failed to adhere to certain rules and regulations codified in 49 CFR §300 *et seq*.

64. As a direct and proximate result of one or more of the foregoing negligent acts, Lewis and Moffett claim injury and damages.

65. At the time Lewis and Moffett were allegedly injured, there was in full force and effect in the State of Illinois a statute known as the Joint Tortfeasors Contribution Act, 740 ILCS 100/100.01 *et seq*., which provides contribution between and among joint tortfeasors.

66. If Hirschbach and/or Campbell should be found liable to Lewis and/or Moffett for the damages alleged in their respective Complaints, which both Hirschbach and Campbell have denied, and continue to deny, it will be due to the negligent acts and/or omissions of Datway.

WHEREFORE, Defendants/Third-Party Plaintiffs, ERIC JEROME CAMPBELL, SR. and HIRSCHBACH MOTOR LINES, INC., respectfully request that if Plaintiffs recover judgement against them, then they be granted judgement against Third-Party Defendant, DATWAY, LLC, in an amount commensurate with DATWAY, LLC'S *pro rata* share of fault in causing the injuries and damages allegedly suffered by Plaintiffs, and for such further relief as this Court deems appropriate.

**DEFENDANTS/THIRD PARTY PLAINTIFFS DEMAND TRIAL BY JURY**

## COUNT IV: NEGLIGENT HIRING, RETENTION, AND SUPERVISION OF MOFFETT AND LEWIS AGAINST DATWAY

67. Hirschbach and Campbell incorporate by reference Paragraphs 1 through 67 as if the same were fully set forth herein.

68. Datway knew or should have known of both Moffett and Lewis's incompetency based upon the fact that both Moffett and Lewis did not have valid CDLs at the time of hiring.

69. Datway knew or should have known of both Moffett's and Lewis's incompetency based upon the fact that both Moffett and Lewis were clearly in violation of their Hours of Service pursuant to 49 CFR §395 in the six days prior to the accident.

70. Datway knew or should have known that Moffett and Lewis were operating defective and dangerous equipment without proper inspections or maintenance.

71. Had Datway exercised proper due diligence upon hiring and supervising both Moffett and Lewis, they would have known of their aforementioned incompetency.

72. As a direct and proximate result of one or more of the foregoing acts of incompetency, Moffett and Lewis claim injury and damages.

73. At the time Lewis and Moffett were allegedly injured, there was in full force and effect in the State of Illinois a statute known as the Joint Tortfeasors Contribution Act, 740 ILCS 100/100.01 *et seq*., which provides contribution between and among joint tortfeasors.

74. If Hirschbach and/or Campbell should be found liable to Lewis and/or Moffett for the damages alleged in their respective Complaints, which both Hirschbach and Campbell have denied, and continue to deny, it will be due to the negligent acts and/or omissions of Datway

WHEREFORE, Defendants/Third-Party Plaintiffs, ERIC JEROME CAMPBELL, SR. and HIRSCHBACH MOTOR LINES, INC., respectfully request that if Plaintiffs recover judgement against them, then they be granted judgement against Third-Party Defendant, DATWAY, LLC, in an amount commensurate with DATWAY, LLC'S *pro rata* share of fault in causing the injuries and damages allegedly suffered by Plaintiffs, and for such further relief as this Court deems appropriate.

**DEFENDANTS/THIRD PARTY PLAINTIFFS DEMAND TRIAL BY JURY**

## COUNT V: NEGLIGENCE AND NEGLIGENCE PER SE AGAINST DATWAY

75. Hirschbach and Campbell incorporate by reference Paragraphs 1 through 75 as if the same were fully set forth herein.

76. At all times relevant herein, Datway was a licensed motor carrier with the United States Department of Transportation and was assigned DOT#3191946 and had motor vehicles it operated under this authority.

77. Datway was required at all times to fully comply with all applicable Federal Motor Carrier Safety Regulations.

78. On information and belief, notwithstanding the foregoing duty, Datway was negligent in one or more of the following ways:

a) Failed to monitor Moffett's Hours of Service;

b) Failed to monitor Lewis' Hours of Service;

c) Failed to insure Moffett and Lewis had valid commercial driver's licenses;

d) Failed to properly train Moffett and/or Lewis regarding the duties of pre-trip inspections;

e) Failed to properly train Moffett and/or Lewis in appropriate post-trip inspections;

f) Failed to properly train Moffett and/or Lewis in appropriate vehicle maintenance with respect to the vehicle and trailer;

g) Permitted Moffett and/or Lewis falsely log their record of duty status;

h) Failed to properly train Moffett and/or Lewis concerning not stopping a vehicle in lanes reserved for moving traffic.

i) Failed to insure Moffett and/or Lewis were not operating vehicles while under the influence of drugs, intoxicating substances, or compounds;

j) Was otherwise careless or negligent.

79. Datway failed to comply with the Federal Motor Carrier Regulations found at 49 CFR 350 through 49 CFR §399, including but not limited to:

a) Failed to monitor Moffett's Hours of Service such that he had over 100 'on-duty' hours six days prior to the accident in violation of 49 CFR §395;

b) Failed to monitor Lewis' Hours of Service such that he had over 100 'on-duty' hours six days prior to the accident in violation of 49 CFR §395;

c) Failed to properly inspect if Moffett and/or Lewis had valid CDLs prior to and after hiring in violation of 49 CFR §391.11;

d) Allowed Moffett and/or Lewis to operate the vehicle while under the influence of drugs or substances which rendered them incapable of safely operating a motor vehicle, and/or allowed the vehicle to be operated by an individual under the influence of drugs or substances which rendered them incapable of safely operating a motor vehicle in violation of Federal Motor Carrier Safety Regulation 49 CFR §392.4

e) Failed to properly train Moffett and/or Lewis regarding requirements of undertaking an appropriate pre-trip inspection such that Moffett and Lewis did not determine that the trailer had defective brakes such that it subjected them and other motorists to injury while traveling upon public roadways in violation of 49 CFR §396.13;

f) Failed to require its Moffett and/or Lewis to engage in an appropriate post-trip inspections which would identify any defect or deficiency such that no corrective action was taken to the trailer, which was traveling upon public roadways with defective brakes in violation of 49 CFR §396.11;

g) Allowed Lewis and/or Moffett to report for duty or remain on duty requiring the performance of safety sensitive functions when the driver used any drug or controlled substance, and/or allowed the driver to remain on duty when the driver used a drug or controlled substance in violation of 49 CFR §382.213;

h) Knowingly permitted Moffett and/or Lewis to falsely log their Record of Duty Status as "off duty" at such time the vehicle was moving and lacked a sleeper berth in compliance with 49 CFR 393.76; in violation of 49 CFR §395

i) Allowed Moffett and/or Lewis to operate equipment in such a condition that it was likely to cause an accident or breakdown in violation of 49 CFR §396.7(a);

j) Allowed Moffett and/or Lewis to operate vehicle and/or trailer without ensuring the proper maintenance of properly performing brakes on the vehicle and trailer in violation of 49 CFR §396.3.a;

k) Allowed Moffett and/or Lewis to operate the trailer without brakes acting on all wheels in violation of 49 CFR §§393.40, 393.42, 393.48, and 393.52; and,

l) Failed to adhere to certain rules and regulations codified in 49 CFR §300 *et seq*.;

80. As a direct and proximate result of one or more of the foregoing negligent acts, Moffett and Lewis claim injury and damages.

81. At the time Lewis and Moffett were allegedly injured, there was in full force and effect in the State of Illinois a statute known as the Joint Tortfeasors Contribution Act, 740 ILCS 100/100.01 *et seq*., which provides contribution between and among joint tortfeasors.

82. If Hirschbach and/or Campbell should be found liable to Lewis and/or Moffett for the damages alleged in their respective Complaints, which both Hirschbach and Campbell have denied, and continue to deny, it will be due to the negligent acts and/or omissions of Datway

WHEREFORE, Defendants/Third-Party Plaintiffs, ERIC JEROME CAMPBELL, SR. and HIRSCHBACH MOTOR LINES, INC., respectfully request that if Plaintiffs recover judgement against them, then they be granted judgement against Third-Party Defendant, DATWAY, llc, in an amount commensurate with DATWAY, llc's *pro rata* share of fault in causing the injuries and damages allegedly suffered by Plaintiffs, and for such further relief as this Court deems appropriate.

**DEFENDANTS/THIRD PARTY PLAINTIFFS DEMAND TRIAL BY JURY**

## COUNT VI: NEGLIGENCE AGAINST MOTOR CARRIER CONSULTANTS

83. Hirschbach and Campbell incorporate by reference Paragraphs 1 through 83 as if the same were fully set forth herein.

84. Beginning in September 2018, Motor Carrier Consultants was retained by Datway, LLC, to assist in obtaining FMCSA operating authority.

85. Motor Carrier Consultants holds itself as assisting over-the-road trucking companies, and individual Owner/Operators in maintaining DOT regulations.

86. Motor Carrier Consultants states on its website, "[L]et MCCI do the work for you so you can focus on keeping your vehicles loaded and moving." (https://www.mccionline.net/aboutus.html, current as of July 28, 2021).

87. Motor Carrier Consultants received a fee for obtaining Datway's operating authority.

88. Upon information and belief, Datway relied on Motor Carrier Consultants when making the following certifications required to obtain operating authority:

1) Has in place a system and an individual responsible for ensuring overall compliance with FMCSRs.

2) Can produce a copy of the FMCSRs and the Hazardous Materials Transportation regulations.

3) Has in place a driver safety/orientation program.

4) Has prepared and maintains an accident register (49 CFR §390.15).

5) Is familiar with DOT regulations governing driver qualifications and has in place a system for overseeing driver qualification requirements (49 CFR §391).

6) Has in place policies and procedures consistent with USDOT regulations governing driving and operational safety or motor vehicles, including drivers' hours of service and vehicle inspection, repair, and maintenance (49 CFR392, 395 and §396).

7) Is familiar with, and will have in place on the appropriate effective date, a system for complying with USDOT regulations governing alcohol and controlled substances testing requirements (49 CFR §§382 and 40).

89. Beginning in October 2019 through all times relevant to this litigation, Motor Carrier Consultants was responsible for monitoring driver duty status, maintaining Department of Transportation Driver Files, administering drug/alcohol testing, and fuel tax programs to comply with Department of Transportation regulations.

90. Motor Carrier Consultants received a monthly fee for monitoring driver duty status, maintaining Department of Transportation Driver Files, administering drug/alcohol testing, and fuel tax programs to comply with Department of Transportation regulations.

91. Motor Carrier Consultants monitoring of driver record of duty status, and maintaining DOT driver files, included monitoring the hours of service and regulation compliance of Plaintiffs Brandon Moffett and Leron Lewis.

92. At all times relevant to this litigation, Motor Carrier Consultants had a duty to monitor driver duty status, maintain Department of Transportation driver files, and administer drug/alcohol testing in a manner consistent with the Federal Motor Carrier Safety Regulations and as not to negligently allow a driver in violation of said regulation to cause a accident and injury to himself f and to other persons lawfully on the public way and road.

93. On information and belief, notwithstanding the foregoing duty, Motor Carrier Consultants was negligent in one or more of the following ways:

a) Failed to monitor Moffett's Hours of Service;

b) Failed to monitor Lewis' Hours of Service;

c) Failed to insure Moffett and Lewis had valid commercial driver's licenses;

d) Permitted Moffett and Lewis falsely log their record of duty status;

e) Failed to implement an appropriate driver safety/orientation program;

f) Failed to implement a systems for overseeing driver qualifications requirements as required by 49 CFR §391;

g) Failed to put in place appropriate policies and procedures consistent with USDOT regulations governing driving and operations safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair, and maintenance as required by 49 CFR §§392, 395, and 396;

h) Failed to implement an appropriate safety plan;

i) Was otherwise careless or negligent.

94. As a direct and proximate result of one or more of the foregoing negligent acts, Moffett and Lewis claim injury and damages.

95. At the time Lewis and Moffett were allegedly injured, there was in full force and effect in the State of Illinois a statute known as the Joint Tortfeasors Contribution Act, 740 ILCS 100/100.01 *et seq*., which provides contribution between and among joint tortfeasors.

96. If Hirschbach and/or Campbell should be found liable to Lewis and/or Moffett for the damages alleged in their respective Complaints, which both Hirschbach and Campbell have denied, and continue to deny, it will be due to the negligent acts and/or omissions of Motor Carrier Consultants

WHEREFORE, Defendants/Third-Party Plaintiffs, ERIC JEROME CAMPBELL, SR. and HIRSCHBACH MOTOR LINES, INC., respectfully request that if Plaintiffs recover judgement against them, then they be granted judgement against Third-Party Defendant, MOTOR CARRIER CONSULTANTS, INC., in an amount commensurate with MOTOR CARRIER CONSULTANT, INC.'S *pro rata* share of fault in causing the injuries and damages allegedly suffered by Plaintiffs, and for such further relief as this Court deems appropriate.

**DEFENDANTS/THIRD PARTY PLAINTIFFS DEMAND TRIAL BY JURY**

## COUNT VII: JOINT ENTERPRISE AGAINST J.B. HUNT

97. Hirschbach and Campbell incorporate by reference Paragraphs 1 through 97 as if the same were fully set forth herein.

98. On November 20, 2019, Third-Party Defendant Datway and Third-Party Defendant JB Hunt entered into an Agreement to haul freight in interstate commerce on behalf of third-party customers.

99. At all relevant times herein, JB Hunt was a Motor Carrier, and subject to the rules and regulations of the United States Department of Transportation and the Federal Motor Carrier Safety Administration, codified in 49 CFR §300 *et seq*.

100. On December 13, 2020, and for a time prior thereto, JB Hunt was engaged in a joint enterprise with Datway for the aforesaid purpose, and each benefited monetarily therefrom.

101. On or about December 2020, JB Hunt agreed to transport two 20' containers (hereinafter "load") shipped from Tacoma, Washington to Fort Campbell, Kentucky, on behalf of Customer, Seabox, Inc. (hereinafter "Seabox").

102. On or about December 11, 2020, JB Hunt selected and dispatched Datway to transport said load in pursuant to the terms of said Agreement.

103. Datway agreed to accept damage to shipments and delayed services.

104. JB Hunt agreed to be liable to Seabox for the load hauled by Datway on or about December 13, 2020, and in all transactions in furtherance of the joint enterprise with JB Hunt and Datway.

105. Pursuant to the terms of said Agreement, Datway was to be paid directly by JB Hunt for this transportation.

106. As a result of this transportation, both Datway and JB Hunt earned or intended to earn a profit.

107. On December 13, 2020, JB Hunt, as part of its joint enterprise with Datway, owned, possessed, and/or controlled the aforementioned vehicle and trailer through Datway, Lewis and/or Moffett as participants in said joint enterprise.

108. At the aforesaid time and place, Datway and JB Hunt had community of interest in the object and purpose of the undertaking for which the vehicle and trailer were being used.

109. JB Hunt approved Datway as the carrier, and Lewis and Moffett as the drivers, to transport the load of which JB Hunt agreed with Sea Box to deliver.

110. JB Hunt had the right to control Datway and/or its drivers, Lewis and Moffett, *inter alia*:

a) The right to impose fines;

b) The right to control the type and quality of equipment to be used;

c) To accept or reject drivers;

d) The right to require check calls;

e) The right to control the time and place of delivery;

f) The right to restrict and/or prohibit re-brokering;

g) The right to control the driver(s);

h) The right to control the manner of loading and unloading; and

i) The right to prohibit Datway from re-brokering the load.

111. JB Hunt dispatched Datway, Lewis, and/or Moffett for the delivery of said load from Washington to Kentucky, which resulted in the aforesaid accident involving Campbell and Hirschbach.

112. Prior to the aforesaid accident, JB Hunt exercised its control by, *inter alia*,

a) Requiring Datway, Lewis, and/or Moffett to remain in frequent contact with JB Hunt;

b) Managing the load from the point of hiring Datway, Lewis, and/or Moffett until the time of the December 13, 2020 accident;

c) Performing a logistics function for the transportation of the load; and

d) Accepting liability for the load it owned from the time of hiring Datway, Lewis, and/or Moffett to the time of the December 13, 2020 accident.

113. JB Hunt prepared, printed, and retained the bill of lading relating to the delivery of said load.

114. JB Hunt listed itself as the third-party broker both on said bill of lading and subsequent written carrier confirmation correspondence with Datway.

115. JB Hunt listed Datway as the carrier on said bill of lading, carrier confirmation correspondence, and other documents prepared by JB Hunt relating to the aforementioned delivery.

116. On or about December 13, 2020, and at all relevant times prior thereto, it was the duty of JB Hunt, individually, and by and through, Datway, Lewis, and/or Moffett, as participants in a joint enterprise, to exercise ordinary care in the ownership, possession, and control of the vehicle and trailer so as to not cause injury to other motorists on southbound I-57, including but not limited to Campbell, Lewis and/or Moffett.

117. Notwithstanding the aforesaid duty, JB Hunt, individually, and by and through Datway, Lewis, and/or Moffett, as participants in a joint enterprise, negligently and carelessly committed one or more of the following wrongful acts or omissions:

a) Operated a commercial vehicle with an invalid and/or expired CDL or otherwise was not qualified to do, and/or allowed the vehicle to be operated by an individual who had an invalid and/or expired CDL or otherwise was not qualified to do so;

b) Failed to drive the vehicle and trailer to a point of safety in an open area on the left side of I-57, or proceed to the exits at West Frankfort (MP 64.6, .6 miles away) or Johnston City (MP 58.9, 6.3 miles away) prior to stopping;

c) Illegally parked, or permitted the vehicle to be illegally parked, in the right lane on I-57;

d) Failed to adhere to industry rules and regulations for driving a commercial vehicle so as to avoid obstructing a lane of travel reserved for traffic;

e) Operated a vehicle while under the influence of drugs, intoxicating substances, or compounds, and/or allowed the vehicle to be operated by an individual under the influence of drugs, intoxicating substances, or compounds;

f) Operated a commercial motor vehicle while his ability or alertness is so impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate a motor vehicle, and/or allowed the vehicle to be operated by an individual while their ability or alertness is o impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to continue to operate a motor vehicle;

g) Failed to engage in appropriate pre-trip inspections on or before the accident date such that he did not determine that the condition of the vehicle and/or trailer subjected Plaintiffs and other motorists to injury while traveling upon public roadways;

h) Failed to engage in an appropriate post-trip inspections on or before the accident date which would identify any defect or deficiency such that no corrective action was taken to the vehicle and/or trailer, including traveling upon public roadways with defective brakes;

i) Failed to properly maintain vehicle;

j) Failed to properly maintain trailer;

k) Failed to adhere to industry standards for driving a commercial motor vehicle in a construction zone;

l) Failed to place a warning device behind the vehicle and trailer to warn other motorists of the illegally parked vehicle and trailer blocking a lane of travel reserved for traffic; and,

m) Were otherwise careless or negligent.

118. Notwithstanding the aforesaid duty, JB Hunt, individually, and by and through Datway, Lewis and/or Moffett, as participants in a joint enterprise, were negligent *per se* in one or more of the following ways:

a) Operated a commercial motor vehicle with an invalid and/or expired CDL or otherwise was not qualified to do so, and/or allowed the vehicle to be operated by an individual who had an invalid and/or expired CDL or otherwise was not qualified to do so in violation of Federal Motor Carrier Safety Regulation 49 CFR §391.11;

b) Violated Hours of Service regulations such that he had over 100 'on-duty' hours six days prior to the accident in violation of 49 CFR §395;

c) Operated the vehicle with knowingly false reports in connection with his Hours of Service and Record of Duty Status, and/or allowing the vehicle to be operated by an individual with knowingly false reports in connection with their Hours of Service and Record of Duty Status in violation of 49 CFR §395.8(e);

d) Illegally parked or improperly permitted his vehicle to be illegally parked in the right lane of I-57 pursuant to 625 ILCS 5/11-1303(a);

e) Operated his vehicle while under the influence of drugs, intoxicating substances, or compounds, and/or allowed the vehicle to be operated by and individual while under the influence of drugs, intoxicating substances or compounds in violation of Section 11-501 of the Illinois Vehicle Code, 625 ILCS 5/11-501;

f) Operated his vehicle while under the influence of drugs or substances which rendered him incapable of safely operating a motor vehicle, and/or allowed the vehicle to be operated by an individual under the influence of drugs or substances which rendered them incapable of safely operating a motor vehicle in violation of Federal Motor Carrier Safety Regulation 49 CFR §392.4;

g) Reported for duty or remained on duty requiring the performance of safety sensitive functions when the driver used any drug or controlled substance, and/or

allowed the driver to remain on duty when the driver used a drug or controlled substance in violation of 49 CFR §382.213;

h) Operated his commercial motor vehicle while his ability or alertness is so impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate a motor vehicle, and/or allowed the vehicle to be operated by an individual whose alertness is so impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate a motor vehicle in violation of Federal Motor Carrier Safety Regulation 49 CFR 392.3;

i) Failed to operate his vehicle in violation of 49 CFR §392.2 by parking the vehicle, or allowing the vehicle to be illegally parked, in a lane reserved for travel on I-57;

j) Failed to engage in an appropriate pre-trip inspection on or before the accident date such that he did not determine that the trailer had defective brakes such that it subjected them and other motorists to injury while traveling upon public roadways in violation of 49 CFR §§396.13, 392.7;

k) Failed to engage in an appropriate post-trip inspections on or before the accident date which would identify any defect or deficiency such that no corrective action was taken to the trailer, which was traveling upon public roadways with defective brakes in violation of 49 CFR §§396.11, 392.7;

l) Failed to properly maintain, or ensure the proper maintenance of properly performing brakes on the vehicle and trailer in violation of 49 CFR §396.3.a;

m) Operated a vehicle in such a condition as to likely cause an accident or breakdown in violation of 49 CFR §396.7(a);

n) Operated the trailer without brakes acting on all wheels in violation of 49 CFR §§393.40, 393.42, 393.48, and 393.52;

o) Failed to utilize flares or other warning devices in violation of 625 ILCS 5/12-702 and/or 49 CFR §392.22; and,

p) Failed to adhere to certain rules and regulations codified in 49 CFR §300 *et seq*

119. As a direct and proximate result of one or more of the foregoing negligent acts, Moffett and Lewis claim injury and damages in the above-captioned cause.

120. At the time Plaintiff was allegedly injured, there was in full force and effect in the State of Illinois a statute known as the Joint Tortfeasors Contribution Act, 740 ILCS 100/100.01 *et seq*., which provides contribution between and among joint tortfeasors.

121. If Hirschbach and/or Campbell should be found liable to Lewis and/or Moffett for the damages alleged in their respective Complaints, which both Hirschbach and Campbell have denied, and continue to deny, it will be due to the negligent acts and/or omissions of JB Hunt.

WHEREFORE, Defendants/Third-Party Plaintiffs, ERIC JEROME CAMPBELL, SR. and HIRSCHBACH MOTOR LINES, INC., respectfully request that if Plaintiffs recover judgement against them, then they be granted judgement against Third-Party Defendant, J.B. HUNT TRANSPORT, INC, in an amount commensurate with J.B. HUNT TRANSPORT, INC.'S *pro rata* share of fault in causing the injuries and damages allegedly suffered by Plaintiff, and for such further relief as this Court deems appropriate.

**DEFENDANTS/THIRD PARTY PLAINTIFFS DEMAND TRIAL BY JURY**

**COUNT VIII: *RESPONDEAT SUPERIOR*/VICARIOUS LIABILITY AGAINST JB HUNT**

122. Hirschbach and Campbell incorporate by reference Paragraphs 1 through 122 as if the same were fully set forth herein.

123. On or about December 13, 2020, and at all relevant times prior thereto, Datway, Lewis, and/or Moffett operated the vehicle and trailer as duly authorized agent(s), servant(s), and/or employee(s) of JB Hunt for the purpose of delivering the load from Washington to Kentucky on its behalf and subject to its control.

124. At the aforesaid time and place, Datway, Lewis, and/or Moffett were acting as actual, implied, and/or apparent agents of JB Hunt, where JB Hunt both held and exercised a right

to control the conduct, actions, means, methods, and the manner of work performed by Datway, Lewis, and/or Moffett.

125. At the aforesaid time and place, JB Hunt, through its duly authorized agent(s), servant(s), and/or employee(s) Datway, Lewis, and/or Moffett, owned, possessed, and/or controlled the vehicle and trailer.

126. At the aforesaid time and place, it was the duty of JB Hunt, individually, and by and through its duly authorized agent(s), servant(s), and/or employee(s), Datway, Lewis, and/or Moffett, to exercise ordinary care in the ownership, possession, and control of the vehicle and trailer so as to not cause injury to other motorists on southbound I-57, including but not limited to Campbell, Lewis and/or Moffett.

127. Notwithstanding the aforesaid duty, JB Hunt, individually, and by and through its duly authorized agent(s), servant(s), and/or employee(s), Datway, Lewis, and/or Moffett, negligently and carelessly committed one or more of the following wrongful acts or omissions:

a) Operated a commercial vehicle with an invalid and/or expired CDL or otherwise was not qualified to do, and/or allowed the vehicle to be operated by an individual who had an invalid and/or expired CDL or otherwise was not qualified to do so;

b) Failed to drive the vehicle and trailer to a point of safety in an open area on the left side of I-57, or proceed to the exits at West Frankfort (MP 64.6, .6 miles away) or Johnston City (MP 58.9, 6.3 miles away) prior to stopping;

c) Illegally parked, or permitted the vehicle to be illegally parked, in the right lane on I-57;

d) Failed to adhere to industry rules and regulations for driving a commercial vehicle so as to avoid obstructing a lane of travel reserved for traffic;

e) Operated a vehicle while under the influence of drugs, intoxicating substances, or compounds, and/or allowed the vehicle to be operated by an individual under the influence of drugs, intoxicating substances, or compounds;

f) Operated a commercial motor vehicle while his ability or alertness is so impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate a motor vehicle, and/or allowed the vehicle to be operated by an individual while their ability or alertness is o impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to continue to operate a motor vehicle;

g) Failed to engage in appropriate pre-trip inspections on or before the accident date such that he did not determine that the condition of the vehicle and/or trailer subjected Plaintiffs and other motorists to injury while traveling upon public roadways;

h) Failed to engage in an appropriate post-trip inspections on or before the accident date which would identify any defect or deficiency such that no corrective action was taken to the vehicle and/or trailer, including traveling upon public roadways with defective brakes;

i) Failed to properly maintain vehicle;

j) Failed to properly maintain trailer;

k) Failing to adhere to industry standards for driving a commercial motor vehicle in a construction zone;

l) Failed to place a warning device behind the vehicle and trailer to warn other motorists of the illegally parked vehicle and trailer blocking a lane of travel reserved for traffic; and,

m) Were otherwise careless or negligent.

128. Notwithstanding the aforesaid duty, JB Hunt, individually, and by and through its duly authorized agent(s), servant(s), and/or employee(s), Datway, Lewis and/or Moffett, were negligent *per se* in one or more of the following ways:

a) Operated a commercial motor vehicle with an invalid and/or expired CDL or otherwise was not qualified to do so, and/or allowed the vehicle to be operated by an individual who had an invalid and/or expired CDL or otherwise was not qualified to do so in violation of Federal Motor Carrier Safety Regulation 49 CFR §391.11;

b) Violated Hours of Service regulations such that he had over 100 'on-duty' hours six days prior to the accident in violation of 49 CFR §395;

c) Operated the vehicle with knowingly false reports in connection with his Hours of Service and Record of Duty Status, and/or allowing the vehicle to be operated by an individual with knowingly false reports in connection with their Hours of Service and Record of Duty Status in violation of 49 CFR §395.8(e);

d) Illegally parked or improperly permitted his vehicle to be illegally parked in the right lane of I-57 pursuant to 625 ILCS 5/11-1303(a);

e) Operated his vehicle while under the influence of drugs, intoxicating substances, or compounds, and/or allowed the vehicle to be operated by and individual while under the influence of drugs, intoxicating substances or compounds in violation of Section 11-501 of the Illinois Vehicle Code, 625 ILCS 5/11-501;

f) Operated his vehicle while under the influence of drugs or substances which rendered him incapable of safely operating a motor vehicle, and/or allowed the vehicle to be operated by an individual under the influence of drugs or substances which rendered them incapable of safely operating a motor vehicle in violation of Federal Motor Carrier Safety Regulation 49 CFR §392.4;

g) Reported for duty or remained on duty requiring the performance of safety sensitive functions when the driver used any drug or controlled substance, and/or allowed the driver to remain on duty when the driver used a drug or controlled substance in of 49 CFR §382.213;

h) Operated his commercial motor vehicle while his ability or alertness is so impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate a motor vehicle, and/or allowed the vehicle to be operated by an individual whose alertness is so impaired or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate a motor vehicle in violation of Federal Motor Carrier Safety Regulation 49 CFR 392.3;

i) Failed to operate his vehicle in violation of 49 CFR §392.2 by parking the vehicle, or allowing the vehicle to be illegally parked, in a lane reserved for travel on I-57;

j) Failed to engage in an appropriate pre-trip inspection on or before the accident date such that he did not determine that the trailer had defective brakes such that it subjected them and other motorists to injury while traveling upon public roadways in violation of 49 CFR §§396.13, 392.7;

k) Failed to engage in an appropriate post-trip inspections on or before the accident date which would identify any defect or deficiency such that no corrective action was taken to the trailer, which was traveling upon public roadways with defective brakes in violation of 49 CFR §§396.11, 392.7;

l) Failed to properly maintain, or ensure the proper maintenance of properly performing brakes on the vehicle and trailer in violation of 49 CFR §396.3.a;

m) Operated a vehicle in such a condition as to likely cause an accident or breakdown in violation of 49 CFR §396.7(a);

n) Operated the trailer without brakes acting on all wheels in violation of 49 CFR §§393.40, 393.42, 393.48, and 393.52;

o) Failed to utilize flares or other warning devices in violation of 625 ILCS 5/12-702 and/or 49 CFR §392.22; and,

p) Failed to adhere to certain rules and regulations codified in 49 CFR §300 *et seq*

129. As a direct and proximate result of one or more of the foregoing negligent acts, Moffett and Lewis claim injury and damages in the above-captioned cause.

130. At the time Plaintiff was allegedly injured, there was in full force and effect in the State of Illinois a statute known as the Joint Tortfeasors Contribution Act, 740 ILCS 100/100.01 *et seq*., which provides contribution between and among joint tortfeasors.

131. If Hirschbach and/or Campbell should be found liable to Lewis and/or Moffett for the damages alleged in their respective Complaints, which both Hirschbach and Campbell have denied, and continue to deny, it will be due to the negligent acts and/or omissions of JB Hunt.

WHEREFORE, Defendants/Third-Party Plaintiffs, ERIC JEROME CAMPBELL, SR. and HIRSCHBACH MOTOR LINES, INC., respectfully request that if Plaintiffs recover judgement against them, then they be granted judgement against Third-Party Defendant, J.B. HUNT TRANSPORT, INC, in an amount commensurate with J.B. HUNT TRANSPORT, INC.'S *pro rata* share of fault in causing the injuries and damages allegedly suffered by Plaintiff, and for such further relief as this Court deems appropriate.

**DEFENDANTS/THIRD PARTY PLAINTIFFS DEMAND TRIAL BY JURY**

**COUNT IX: NEGLIGENT HIRING RETENTION, AND SUPERVISION OF DATWAY AGAINST JB HUNT**

132. Hirschbach and Campbell repeat and reallege Paragraphs 1 through 132 as if the same were fully set forth herein.

133. The aforementioned Agreement between JB Hunt and Datway required Datway to provide proof to JB Hunt that it held an FMSCA Carrier Safety Rating of "Satisfactory" prior to hauling freight in interstate commerce on behalf of JB Hunt and third-party customers.

134. On or about December 13, 2020, and at all relevant times prior thereto, Datway neither provided JB Hunt such proof" nor did Datway in fact hold an FMSCA Carrier Rating of "Satisfactory" at any time.

135. Notwithstanding the failure of Datway to hold or provide proof of such safety rating, on or about November 20, 2019, JB Hunt hired, contracted with, and/or retained Datway for the aforesaid purpose.

136. On or about November 11, 2020, JB Hunt dispatched Datway to transport a load of freight from Nashville, Tennessee to Largo, Florida on behalf of Customer, Lowes Companies, Inc., which, on information and belief, Datway delivered on November 12, 2020.

137. During the aforesaid time period, Datway, individually, and by and through its agent(s), servant(s) and/or employee(s), including but not limited to Lewis and Moffett, operated a commercial motor vehicle near-continuously and engaged in "team driving" without a sleeper berth in compliance with 49 CFR §393.76, constituting a near-continuous violation of federal Hours of Service and Record of Duty Status regulations.

138. On or about December 13, 2020, and for at least six (6) days prior thereto, Lewis and/or Moffett again operated the vehicle and trailer near-continuously by "team driving" without a sleeper berth in compliance with 49 CFR §393.76

139. On or about December 13, 2020, and during the six (6) days prior thereto Lewis and Moffett had each accumulated more than one-hundred (100) 'on-duty' hours.

140. During the aforesaid time period, Lewis and Moffett routinely and knowingly falsified their Driver Record of Duty Status by logging themselves as "off-duty" when the vehicle was moving and lacked a sleeper berth in compliance with 49 CFR §393.76

141. On or about December 13, 2020, and at all relevant times prior thereto, Datway, individually, and through its duly authorized agent(s), servants(s), and/or employee(s), Lewis, and/or Moffett, operated the vehicle and trailer when the brakes of the trailer were defective and/or malfunctioning.

142. During the aforesaid time period, Datway, individually, and through its duly authorized agent(s), servants(s), and/or employee(s), Lewis, and/or Moffett, operated the vehicle and trailer under the influence of a controlled substance in violation of 49 CFR §392.4.

143. During the aforesaid time period, on information and belief, Datway, individually, and through its duly authorized agent(s), servants(s), and/or employee(s), Lewis, and/or Moffett, operated the vehicle and trailer with invalid and/or expired CDLs.

144. Notwithstanding the foregoing, JB Hunt continued to retain Datway for the aforesaid purpose through the date and time of the accident in question on December 13, 2020.

145. Prior to December 13, 2020, the FMSCA promulgated a set of criteria that would define conditions in which a driver or commercial motor vehicle would be placed out of service ("OOS") and removed from the roadway.

146. Upon information and belief, on or about December 13, 2020, and at all relevant times prior thereto, Datway had an out-of-service order percentage that exceeded the national average for its drivers, including but not limited to Lewis and Moffett

147. Upon information and belief, on or about December 13, 2020, and at all relevant times prior thereto, Datway had an out-of-service order percentage that exceeded the national average for its vehicles, including but not limited to the subject vehicle and trailer.

148. During the aforesaid time period, JB Hunt knew or should have known that Datway was an unfit motor carrier, and that Lewis and/or Moffett were unfit drivers, to transport the load from Washington to Kentucky.

149. During the aforesaid time period, JB Hunt owed a duty of reasonable care to employ a fit and competent motor carrier to transport freight in interstate commerce on behalf of third-party customers as to not cause injury to other motorists on southbound I-57, including but not limited to Campbell, Lewis and/or Moffett.

150. Notwithstanding the aforesaid duty, JB Hunt negligently and carelessly committed one or more of the following wrongful acts or omissions:

a) Negligently hired, supervised, and retained a motor carrier and its driver(s), namely, Datway, Lewis, and/or Moffett, while such motor carrier and/or driver(s) were unfit to operate the vehicle and trailer at all relevant times;

b) Violated its own internal policies, procedures, and/or standards in hiring, retaining, and supervising a motor carrier and its driver(s), namely, its requirement that all motor carriers have a satisfactory rating and provide proof thereof;

c) Negligently hired, supervised, and retained Datway, when it knew or should have known that Datway was operating a commercial motor vehicle utilizing driver(s) with invalid and/or expired CDLs;

d) Negligently hired, supervised, and retained Datway, when it knew or should have known that Datway was operating a commercial motor vehicle near-continuously and engaging in "team driving" without a sleeper berth in compliance with 49 CFR 393.76 in violation of 49 CFR §395, *et seq*;

e) Negligently hired, supervised, and retained Datway when it knew or should have known that its driver(s), namely Lewis and Moffett, routinely and knowingly falsified their Driver Record of Duty Status by logging themselves as "off-duty" when the vehicle was moving and lacked a sleeper berth in compliance with 49 CFR 393.76 in violation of 49 CFR §395.8(e);

f) Negligently hired, supervised, and retained Datway when it knew or should have known that Datway was operating a commercial motor vehicle utilizing driver(s) who had accumulated more than 100 'on-duty' hours in the six days prior to the December 13, 2020 accident in violation of 49 CFR §395;

g) Negligently hired, supervised, and retained Datway, when it knew or should have known that Datway was operating a commercial motor vehicle with defective, malfunctioning, or otherwise inadequate brakes and brake systems in violation of 49 CFR §393.40 and 49 CFR §393.52;

h) Negligently, hired, supervised, and retained Datway, when it knew or should have known that Datway was operating a commercial motor vehicle Lewis, and/or Moffett, operated the vehicle and trailer utilizing drivers under the influence of a controlled substance in violation of 49 CFR §392.4; and

i) Was otherwise careless and negligent.

151. As a direct and proximate result of one or more of the foregoing negligent acts, Moffett and Lewis claim injury and damages in the above-captioned cause.

152. At the time Plaintiff was allegedly injured, there was in full force and effect in the State of Illinois a statute known as the Joint Tortfeasors Contribution Act, 740 ILCS 100/100.01 *et seq*., which provides contribution between and among joint tortfeasors.

153. If Hirschbach and/or Campbell should be found liable to Lewis and/or Moffett for the damages alleged in their respective Complaints, which both Hirschbach and Campbell have denied, and continue to deny, it will be due to the negligent acts and/or omissions of JB Hunt.

WHEREFORE, Defendants/Third-Party Plaintiffs, ERIC JEROME CAMPBELL, SR. and HIRSCHBACH MOTOR LINES, INC., respectfully request that if Plaintiffs recover judgement against them, then they be granted judgement against Third-Party Defendant, J.B. HUNT TRANSPORT, INC, in an amount commensurate with J.B. HUNT TRANSPORT, INC.'S *pro rata* share of fault in causing the injuries and damages allegedly suffered by Plaintiff, and for such further relief as this Court deems appropriate.

**DEFENDANTS/THIRD PARTY PLAINTIFFS DEMAND TRIAL BY JURY**

**COUNT X: McGRIFF TIRE CO., INC.**
**(NEGLIGENCE AND NEGLIGENCE PER SE)**

154. Hirschbach and Campbell repeat and reallege Paragraphs 1 through 154 as if the same were fully set forth herein.

155. McGriff Tire is an Alabama Corporation with its corporate headquarters at 86 Walnut Street in Cullman, Alabama, 35055. It has a number of service and maintenance locations in Alabama and Tennessee, one of which is at 2409 E I-65 Service Road North, Prichard, Alabama, 36610.

156. McGriff Tire advertises and represents, among other things, that it offers a wide range of truck, trailer and tire services, including highly specialized mechanics trained to handle all critical equipment, maintenance and management needs of commercial motor vehicles and commercial motor vehicle fleets.

157. With respect to trailer work, McGriff Tire advertises and represents that is can provide regular trailer inspections which increases vehicle operational readiness, reduces cost and gives a fleet a competitive advantage. McGriff Tire Co., Inc. represents and advertises that an essential part of its Trailer Readiness Services results in repairs which increase vehicle utilization while reducing down time. McGriff Tire Co., Inc. further represents and advertises that its Trailer Readiness Services include standardized, quality trailer inspections, improvements in vehicle and fleet safety, customized, consolidated reports on brakes, lights and tires and increased driver safety and satisfaction through better maintained trucks and trailers.

158. Prior to the subject accident, Plaintiff Moffett took a 2017 Chevrolet Silverado 3500, VIN #1GC4CZCY9HF181S60, and 2019 Big Tex Trailer, VIN #16VQX3522K6094957, to McGriff Tire Co., Inc.'s location, upon information and belief, at 2409 E. I-65 Service Road North, Prichard, Alabama, 36110, for purposes of DOT Annual Inspections and any necessary maintenance/repair work associated with said vehicles. Upon information and belief, the DOT Annual Inspections along with any necessary maintenance/repair work were performed on or about October 21, 2020.

159. The DOT Annual Inspections performed upon the 2017 Chevrolet Silverado 3500 and 2019 Big Tex Trailer specifically found that there were no problems with any of the components inspected, which included among other things, brakes systems, coupling devices, tires, wheels and rims and lighting devices. There were no specific components that were inspected and found to be in need of repairs for both the 2017 Chevrolet Silverado 3500 and 2019 Big Tex Trailer. Both vehicles were found to have passed the annual inspection in accordance with 49 CFR Part 396.

160. In addition to the DOT Annual Inspections identified above, there was maintenance/repair work performed upon the 2019 Big Tex Trailer which included, among other things, replacing four wheel seals and performance of electric brake assembly/maintenance.

160. As mentioned earlier, upon information and belief, the repair work for the 2019 Big Tex Trailer was allegedly performed on or about October 21, 2020 and subsequently invoiced on or about October 23, 2020, Invoice No. 4870013417, totaling $1,053.31.

161. McGriff Tire, by and through its employees, agents and/or representatives, owed a duty of care to perform inspection, repairs, and/or maintenance on Plaintiff Moffett's vehicles in a reasonable and workmanlike manner.

162. McGriff Tire failed to perform the inspection, repairs and/or maintenance upon Plaintiff Moffett's vehicles in a reasonable and workmanlike manner.

163. Upon information and belief, McGriff Tire's negligent acts and/or omissions include one or more of the following:

(a) Failed to properly determine that all brakes were functioning for the 2019 Big Tex Trailer prior to returning possession of said trailer to the Plaintiff Moffett and allowing said trailer to travel on public roadways;

(b) Failed to properly inspect the chassis wire harness to confirm that all brakes were functioning properly prior to returning possession of said trailer to Plaintiff Moffett, and allowing said trailer to be utilized on public roadways;

(c) Improperly installed hub seals in the Big Tex Trailer brake system that resulted in an accumulation of bearing grease which operated to reduce braking efficiency and capacity prior to allowing said trailer to be utilized on public roadways;

(d) Failed to properly assess and evaluate that the 2019 Big Tex Trailer was equipped with fully operating brakes prior to allowing said trailer to travel on public roadways;

(e) Failed to properly inspect, assess and evaluate that the 2019 Big Tex Trailer had brakes acting on all wheels prior to allowing said trailer to travel on public roadways;

(f) Failed to properly inspect, assess, evaluate and perform maintenance, as necessary, to ensure that the 2019 Big Tex Trailer had brakes adequate to stop and hold the combination of the 2017 Chevrolet Silverado 3500 and 2019 Big Tex Trailer;

(g) Failed to perform appropriate maintenance such that the 2019 Big Tex Trailer did not have sufficient braking force prior to allowing said trailer to travel on public roadways;

(h) Failed to properly inspect, assess, evaluate and perform maintenance, as necessary, on the 2019 Big Tex Trailer such that the trailer was not in safe operating condition prior to allowing said trailer to travel on public roadways;

(i) Failed to properly inspect, assess, evaluate and perform maintenance, as necessary, on the 2019 Big Tex Trailer brakes such that the trailer was likely to cause an accident or breakdown prior to allowing said trailer to travel on public roadways;

(j) Failed to exercise the appropriate standard of care in training and supervising its maintenance technicians and/or maintenance inspectors such that they were not capable of properly performing necessary repairs upon the 2019 Big Tex Trailer prior to allowing said trailer to travel on public roadways;

(k) Utilized maintenance technicians and maintenance inspectors who were not qualified to perform proper inspections and/or maintenance upon the 2019 Big Tex Trailer prior to allowing said trailer to travel on public roadways;

(l) Failed to properly identify any and all defects of either the 2017 Chevrolet Silverado 3500 and 2019 Big Tex Trailer during the DOT Annual Inspections such that said vehicles in combination should not have been traveling on public roadways at or about the time of the accident;

(m) Failed to properly perform maintenance and DOT Annual Inspection upon the 2019 Big Tex Trailer such that deficiencies of the brake system were not properly identified when proper maintenance and DOT Annual Inspections would have determined that said trailer should have been placed out of service at or about the time of the accident prior thereto;

(n) Failed to properly assess the performance of the brake systems for the 2019 Big Tex Trailer during the DOT Annual Inspection such that the Big Tex Trailer had multiple defective brakes which placed the combination of the 2017 Chevrolet Silverado 3500 and 2019 Big Tex Trailer out of service at or about the time of the accident and prior thereto.

164. Upon information and belief, McGriff Tire was negligent *per se* in one or more of the following ways:

(a) Failed to properly assess and evaluate that the 2019 Big Tex Trailer was equipped with fully operating brakes in violation of 49 CFR §393.48 of the Federal Motor Carrier Safety Regulations;

(b) Failed to properly inspect, assess and evaluate that the 2019 Big Tex Trailer had brakes acting on all wheels in violation of 49 CFR §392.42 of the Federal Motor Carrier Safety Regulations;

(c) Failed to properly perform the DOT Annual Inspection (49 CFR §396.17) to ensure that the 2019 Big Tex Trailer had brakes adequate to stop and hold the vehicle or combination of motor vehicles in violation of 49 CFR §393.40 of the Federal Motor Carrier Safety Regulations;

(d) Failed to properly perform the DOT Annual Inspection (49 CFR §396.17) such that the 2019 Big Tex Trailer was not being in a safe and proper operating condition in violation of 49 CFR §396.3 of the Federal Motor Carrier Safety Regulations;

(e) Failed to properly perform the DOT Annual Inspection (49 CFR §396.17) which resulted in the 2019 Big Tex Trailer not being in safe and proper operating condition in violation of 49 CFR §396.3 of the Federal Motor Carrier Safety Regulations;

(f) Failed to properly perform the DOT Annual Inspection (49 CFR §396.17) resulting in the 2019 Big Tex Trailer being in such a condition likely to cause an accident or breakdown in violation of 49 CFR §396.7 of the Federal Motor Carrier Safety Regulations;

(g) Failed to properly train and supervise its maintenance inspectors such that they were not properly qualified to perform DOT Annual Inspections in violation of 49 CFR §396.17 and 49 CFR §396.19 of the Federal Motor Carrier Safety Regulations;

(h) Utilized inspector(s) for the performance of the DOT Annual Inspections (49 CFR §396.17) for the 2017 Chevrolet Silverado 3500 and 2019 Big Tex Trailer who were not qualified to perform said inspections in violation of 49 CFR §396.19 of the Federal Motor Carrier Safety Regulations;

165. McGriff Tire is responsible for the conduct, acts and/or omissions of its employees, agents or representatives.

166. In the event that Campbell and/or Hirschbach are found liable for the accident described in Plaintiffs' Complaints, any recovery in that regard will be the direct and proximate result of the alleged negligent acts and/or omissions of McGriff Tire in that regard.

167. In the event of a judgment against the Defendants/Third Party Plaintiffs, Campbell and/or Hirschbach and in the favor of the Plaintiffs, Campbell and Hirschbach will be entitled to contribution from McGriff Tire to the extent that McGriff Tire's negligence proximately contributed to cause any damages which are awarded to the Plaintiffs.

WHEREFORE, Defendants/Third Party Plaintiffs, ERIC JEROME CAMPBELL, SR. and HIRSCHBACH MOTORS LINES, INC., pray for entry of a judgment in their favor and against the Third Party Defendant, MCGRIFF TIRE CO., INC., under Count X of its Third Party Complaint for Contribution commensurate with the proportionate fault of Third Party Defendant, MCGRIFF TIRE CO., INC., and to the extent permitted by law.

**DEFENDANTS/THIRD PARTY PLAINTIFFS DEMAND TRIAL BY JURY**

## COMMON ALLEGATIONS

## COUNT XI – BENDIX COMMERCIAL VEHICLE SYSTEMS LLC AND NAVISTAR, INC. (NEGLIGENCE)

## COUNT XII – BENDIX COMMERCIAL VEHICLE SYSTEMS LLC. AND NAVISTAR, INC. (STRICT TORT LIABILITY)

168. Hirschbach and Campbell repeat and reallege Paragraphs 1 through 167 as if the same were fully set forth herein.

169. Navistar is a Delaware Corporation with its principal place of business located in Lisle, Illinois. Navistar manufactures and distributes Class 4-8 trucks and buses in the common carrier, primary carrier, government, leasing, construction, energy/petroleum, and student and commercial transportation markets.

170. Bendix is a Delaware Limited Liability Company with its principal place of business located at Elyria, Ohio. Bendix Commercial Vehicle Systems offers a number of component parts for trucks and trailers, including antilock brake systems, stability systems, steering, advanced driver assistance systems, valves, accident mitigation/avoidance systems and complete wheel–end solutions.

171. Navistar manufactured a 2019 International tractor Model LT625 6x4, VIN #3HSDZTZR7KN121541 ("the Tractor"). The International tractor was ordered from Thompson Truck & Trailer, LLC. on or about March 22, 2018 and was delivered to Hirschbach on or about September 12, 2018.

172. Hirschbach entered into an Independent Contractor Service Agreement on August 19, 2020 under which Campbell, operating under EJC Transport and Logistics, LLC., agreed to transport freight under the DOT operating authority granted to Hirschbach. Under said Independent Contractor Services Agreement, Campbell, operating through EJC Transport and Logistics, LLC., was to provide truck driving services utilizing Hirschbach Unit #29192, the subject Tractor.

173. Title to the subject truck was taken by G. R. Equipment Leasing, Inc., d/b/a Next Level Leasing, Inc., and was leased to EJC Transport and Logistics, LLC. subsequent to Campbell entering into the Independent Contractor Service Agreement on or about August 18, 2020.

174. As alleged in Answers filed to the Complaints of Plaintiffs Lewis and Moffett, Campbell was a statutory employee pursuant to 49 CFR Section 390.5 at or about the time of the accident occurring on or about December 13, 2020.

175. The subject tractor was equipped with a Bendix Wingman Fusion System, which included a Fusion radar, Fusion camera, Safety Direct Processor and Fusion brake controller.

176. The Bendix Wingman Fusion System was designed, manufactured, supplied, distributed and/or sold by Bendix and Navistar

177. Campbell, who was operating under EJC Transport and Logistics, LLC., and Hirschbach, were in the class of persons that Bendix and Navistar should have reasonably foreseen may be subject to harm caused by the defective design and/or manufacturer of the subject tractor, including its Bendix Wingman Fusion System.

178 At all relevant times, Bendix and Navistar had a duty to exercise reasonable care and to comply with existing standards of care in their preparation, design, research, development, manufacture, inspection, labeling, marketing, promotion and sale of the subject tractor including its Bendix Wingman Fusion System, which Bendix and Navistar introduced into the stream of commerce.

179. At all relevant times, Bendix and Navistar had a duty to warn its users and consumers of the risks and dangers associated with the subject tractor, including its Bendix Wingman Fusion System.

180. At all relevant times, Bendix and Navistar knew or reasonably should have known that the subject tractor, including its Bendix Wingman Fusion System, was dangerous and defective when used as directed and as designed.

181. The subject tractor, including its Bendix Wingman Fusion System, was defective in design and formulation and dangerous when it left the hands of Bendix and Navistar and reached Campbell, operating under EJC Transport and Logistics, LLC., and Hirschbach without substantial alteration in the condition in which it was sold.

182. Bendix and Navistar marketed and advertised the Bendix Wingman Fusion System as a next generation advanced safety technology that provided a comprehensive driver assistance system that was more powerful than the other safety system technology combinations in the North American commercial vehicle marketplace at all relevant times herein.

183. Bendix and Navistar represented and advertised that the Bendix Wingman Fusion System's technical advances delivered, among other things, stationary vehicle braking and/or alerts to the commercial motor vehicle driver. The Bendix Wingman Fusion System was marketed, promoted and designed to alert a driver or engage the autonomous accident mitigation braking up to 3 or 3.5 seconds before an impact.

184. Bendix and Navistar marketed, promoted and designed the Bendix Wingman Fusion System to detect objects, moving and stationary, within a range of 22 degrees and 500 feet away.

185. Bendix and Navistar marketed, promoted and designed the Bendix Wingman Fusion System to create a viewing angle of 42 degrees when the radar and camera worked together, specifically advertising and marketing that the system detects objects visually much like

a driver's eyes and is highly effective at determining the size, lane position, and critical characteristics of an object.

186. Bendix and Navistar marketed, promoted and designed the Bendix Wingman Fusion System such that a driver would receive audible and visual alerts up to 3.0 seconds before potential impact when a large metallic object may be blocking a lane of travel.

187. The subject tractor, including its Bendix Wingman Fusion System, was defective when used as directed in the design due to, but not limited to, the following:

(a) Failed to detect the 2017 Chevrolet Silverado 3500 and 2019 Big Tex Gooseneck Trailer containing two 20 foot long overseas containers illegally stopped within the driving lane along Interstate 57 Southbound at or about the time of the accident;

(b) Failed to timely alert and/or properly warn driver Campbell of the presence of the 2017 Chevrolet Silverado 3500 and 2019 Big Tex Trailer containing two 20 foot overseas containers while illegally stopped in the driving lane for Interstate 57 Southbound so as to avoid the subject accident or mitigate any damages resulting therefrom;

(c) Failed to timely and/or properly engage the passive accident mitigation technology to avoid the subject accident or mitigate any damages resulting therefrom;

(d) Failed to provide appropriate “forward accident" warnings to drivers such as Campbell when confronted with the presence of a 2017 Chevrolet Silverado 3500 and 2019 Bix Tex trailer containing two 20 foot long overseas containers illegally stopped within the driving lane for Interstate 57 Southbound;

(e) Failed to timely provide "forward accident" warnings to drivers such as Campbell when confronted with the presence of a 2017 Chevrolet Silverado 3500 and 2019 Big Tex Trailer containing two 20 foot long overseas containers illegally stopped within the driving lane for Interstate 57 Southbound;

(f) Failed to properly warn that the Bendix Wingman Fusion System would not engage or engage at such a time where no corrective action could be

taken by a driver when a stationary object would be blocking a lane of travel;

(g) Failed to warn that the Bendix Wingman Fusion System would not engage or would engage at such a time where no corrective action could be taken by a driver with the presence of a grade being travelled upon and where a stationary object would be blocking a lane of travel.

188 The subject tractor including its Bendix Wingman Fusion System, was manufactured, designed and distributed by Bendix and Navistar and was dangerous and defective beyond the extent contemplated by ordinary consumers with ordinary knowledge regarding these products.

189. The subject tractor, including its Bendix Wingman Fusion System, was defective due to inadequate warnings and/or instructions describing the system's limitations that should have been provided to its consumers.

**COUNT XI- BENDIX COMMERCIAL VEHICLE SYSTEMS LLC AND NAVISTAR, INC. (NEGLIGENCE)**

190. Hirschbach and Campbell repeat and reallege Paragraphs 1 through 189 as if the same were fully set forth herein.

191. Bendix and Navistar knew, or in the exercise of reasonable care should have known, that the subject tractor, including its Bendix Wingman Fusion System, and its related equipment, component parts, warning labels and constituents, was a product of such a nature that if it was not properly manufactured, designed, assembled, compounded, tested, inspected, packaged, labeled, or fabricated, constructed, analyzed, instructed, warned, distributed, supplied, maintained, repaired, serviced, merchandized, recommended, advertised, promoted, marketed, sold, or leased for the use and purpose which it was intended, it was likely to injure individuals and expose individuals to a reasonably foreseeable risk of harm.

192. Bendix and Navistar negligently and carelessly manufactured, designed, assembled, compounded, tested or failed to test, inspected or failed to inspect, packaged, labeled, fabricated, constructed, analyzed, instructed, warned or failed to warn, distributed, supplied, serviced, maintained, repaired, merchandized, recommended, advertised, promoted, marketed, sold and/or installed on the subject tractor, including its Bendix Wingman Fusion System, and its related equipment, component parts, warning labels and constituents.

193. In the event that Campbell and/or Hirschbach are found liable for the accident described in Plaintiffs' Complaints, any recovery in that regard will be the direct and proximate result of the alleged negligent acts and/or omissions of Bendix and Navistar in that regard.

194. In the event of a judgment against the Defendants/Third Party Plaintiffs, Campbell and/or Hirschbach and in the favor of the Plaintiffs, Campbell and Hirschbach will be entitled to contribution from Bendix and Navistar to the extent that Bendix and Navistar's negligence proximately contributed to cause any damages which are awarded to the Plaintiffs.

WHEREFORE, Defendants/Third Party Plaintiffs, ERIC JEROME CAMPBELL, SR. and HIRSCHBACH MOTORS LINES, INC., pray for entry of a judgment in their favor and against the Third Party Defendants, BENDIX COMMERCIAL VEHICLE SYSTEMS LLC and NAVISTAR, INC. under Count XI of its Third Party Complaint for Contribution commensurate with the proportionate fault of Third Party Defendants, BENDIX COMMERCIAL VEHICLE SYSTEMS LLC and NAVISTAR, INC. and to the extent permitted by law.

**DEFENDANTS/THIRD PARTY PLAINTIFFS DEMAND TRIAL BY JURY**

## COUNT XII- BENDIX COMMERCIAL VEHICLE SYSTEMS LLC AND NAVISTAR, INC.
## (STRICT TORT LIABILITY)

195. The subject vehicle, which was designed, manufactured and distributed by Bendix and Navistar was defective in its design, manufacture, warnings at the time it left the possession of Bendix and Navistar causing the subject vehicle, including its Bendix Wingman Fusion System and its component parts, to be in a defective condition that made it dangerous and unsafe for its intended uses.

196. As a proximate result of the design defects, manufacturing defects and warning defects on the subject vehicle, and in the event that Campbell and/or Hirschbach are found liable for the accident described in Plaintiffs' Complaints, any recovery in that regard would be the direct and proximate result of the design defects, manufacturing defects and warning defects on the subject vehicle, including the Bendix Wingman Fusion System.

197. In the event of a judgment against the Defendants/Third Party Plaintiffs Campbell and/or Hirschbach, and in the favor of the Plaintiffs, Campbell and Hirschbach will be entitled to contribution from Bendix and Navistar to the extent that Bendix and Navistar's design defects, manufacturing defects and warning defects proximately contributed to cause any damages which are awarded to the Plaintiffs.

WHEREFORE, Defendants/Third Party Plaintiffs, ERIC JEROME CAMPBELL, SR. and HIRSCHBACH MOTORS LINES, INC., pray for entry of a judgment in their favor and against the Third Party Defendants, BENDIX COMMERCIAL VEHICLE SYSTEMS LLC and NAVISTAR, INC. under Count XII of its Third Party Complaint for Contribution commensurate with the proportionate fault of Third Party Defendants, BENDIX COMMERCIAL VEHICLE SYSTEMS LLC and NAVISTAR, INC. and to the extent permitted by law.

**DEFENDANTS/THIRD PARTY PLAINTIFFS DEMAND TRIAL BY JURY**

## COMMON ALLEGATIONS

### COUNT XIII – BIG TEX TRAILER MANUFACTURING, LLC. (NEGLIGENCE)

### COUNT XIV – BIG TEX TRAILER MANUFACTURING, LLC. (STRICT TORT LIABILITY)

198. Hirschbach and Campbell repeat and reallege Paragraphs 1 through 197 as if the same were fully set forth herein.

199. On information and belief, Big Tex manufactured and distributed the 2019 Big Tex Gooseneck Dual Tandem Flatbed Trailer (VIN # 16VGX3522K6094957; Stock No. 22GN-35BK+5MR) (hereinafter "the trailer") involved in the above-described accident.

200. On information and belief, on or before December 20, 2018 Big Tex manufactured and sold the trailer to Lewis Trailer Sales, Inc. (16494 Hwy 49, Saucier, MS 39574).

201. On information and belief, on October 15, 2020, the trailer was subsequently purchased by Brandon Moffett of Mobile, Alabama, who then placed it into commercial service hauling freight under Datway, LLC, a motor carrier (USDOT # 3191946).

202. On or before December 13, 2020, there existed a manufacturing and/or design defect in the Big Tex trailer electric brakes systems (and potentially other components of the same), which rendered the electric brakes of the trailer defective or otherwise inoperable.

203. On or about the same date, said trailer lacked any system or subsystem to self-diagnose faults in the electric brakes system, and promptly warn operators, passengers, and/or maintenance personnel of the same.

204. The trailer, and other components of the same, were designed, manufactured, assembled, supplied, distributed and/or sold by Big Tex.

205. At all relevant times, Big Tex and had a duty to exercise reasonable care and to comply with existing standards of care in their preparation, design, research, development, manufacture, inspection, labeling, marketing, promotion and sale of the subject trailer, and other components of the same, which Big Tex introduced into the stream of commerce.

206. At all relevant times, Big Tex had a duty to warn its users and consumers of the risks and dangers associated with the subject trailer and its electric brakes systems.

207. At all relevant times, Big Tex knew or reasonably should have known that the subject trailer, its electric brakes systems, and/or other components of the same were dangerous and defective when used as directed and as designed.

208. The subject trailer, its electric brakes systems, and/or other components of the same, were defective in design and formulation and dangerous when they left the hands of Big Tex, and foreseeably encountered Campbell and Hirschbach without substantial alteration in the condition in which they were sold.

209. Big Tex markets such trailers as an incredible value, innovative, and inspected by trained mechanics to ensure that every weld and component is in perfect shape for years of reliable service.

210. The subject trailer, its electric brakes systems, and/or other components of the same, were defective when used as directed in the design due to, but not limited to, the following:

(a) Restricted or otherwise eliminated proper electrical connection between the Chevy 3500 and trailer;

(b) Restricted or otherwise eliminated proper electrical connection between the electrical brakes of the trailer;

(c) Restricted or otherwise eliminated amperage flow to the electrical brake of the trailer, such that the brakes were rendered defective or otherwise inoperable;

(d) Failed to provide foreseeable consumer(s) of the trailer with adequate warning(s) of said restricted or otherwise eliminated proper electrical connection between the Chevy 3500 and the trailer at a reasonable time prior to the accident;

(e) Failed to provide foreseeable consumer(s) of the trailer with adequate warning(s) of the risk of its electric brakes losing proper electrical connection and amperage due to the aforementioned defect(s).

(f) Failed to equip the trailer with fault lights or other warning mechanism(s) to adequately warn the consumer(s) and/or maintenance personnel of electric brakes issue(s); and

(g) Failed to provide foreseeable consumer(s) of the trailer and/or maintenance personnel with adequate warning(s) and instruction(s) to diagnose and address electric brakes issues.

211. The subject trailer, its electric brakes systems, and/or other components of the same, were manufactured, designed and distributed by Big Tex and were dangerous and defective beyond the extent contemplated by ordinary consumers with ordinary knowledge regarding these products.

212. The subject trailer, its electric brakes systems, and/or other components of the same, were defective due to inadequate warnings and/or instructions describing product limitations that should have been provided to its consumers.

**COUNT XIII - BIG TEX TRAILER MANUFACTURING, LLC (NEGLIGENCE)**

213. Hirschbach and Campbell repeat and reallege Paragraphs 1 through 213 as if the same were fully set forth herein.

214. Big Tex knew, or in the exercise of reasonable care should have known, that the subject trailer, its electric brakes systems, and their related equipment, component parts, warning

labels and constituents, were products of such a nature that if they was not properly manufactured, designed, assembled, compounded, tested, inspected, packaged, labeled, or fabricated, constructed, analyzed, instructed, warned, distributed, supplied, maintained, repaired, serviced, merchandized, recommended, advertised, promoted, marketed, sold, or leased for the use and purpose which they were intended, they were likely to injure individuals and expose individuals to a reasonably foreseeable risk of harm.

215. Big Tex negligently and carelessly manufactured, designed, assembled, compounded, tested or failed to test, inspected or failed to inspect, packaged, labeled, fabricated, constructed, analyzed, instructed, warned or failed to warn, distributed, supplied, serviced, maintained, repaired, merchandized, recommended, advertised, promoted, marketed, sold and/or installed on the subject trailer, its electric brakes systems, and their related equipment, component parts, warning labels and constituents.

216. In the event that Campbell and/or Hirschbach are found liable for the accident described in Plaintiffs' Complaints, any recovery in that regard will be the direct and proximate result of the alleged negligent acts and/or omissions of Big Tex in that regard.

217. In the event of a judgment against the Defendants/Third Party Plaintiffs, Campbell and/or Hirschbach and in the favor of the Plaintiffs, Campbell and Hirschbach will be entitled to contribution from Big Tex to the extent that its negligence proximately contributed to cause any damages which are awarded to the Plaintiffs.

WHEREFORE, Defendants/Third Party Plaintiffs, ERIC JEROME CAMPBELL, SR. and HIRSCHBACH MOTORS LINES, INC., pray for entry of a judgment in their favor and against the

Third Party Defendant, BIG TEX MANUFACTURING COMPANY, LLC. commensurate with its proportionate fault and to the extent permitted by law.

**DEFENDANTS/THIRD PARTY PLAINTIFFS DEMAND TRIAL BY JURY**

**COUNT XIV - BIG TEX TRAILER MANUFACTURING, LLC.**
**(STRICT TORT LIABILITY)**

218. The subject trailer, its electric brakes systems, and/or other components of the same, which were designed, manufactured and distributed by Big Tex, were defective in their design, manufacture, warnings at the time they left the possession of Big Tex, causing the subject trailer, its electric brakes systems, and/or other components of the same, be in a defective condition that made them dangerous and unsafe for their intended uses.

219. As a proximate result of the design defects, manufacturing defects and warning defects on the subject products, and in the event that Campbell and/or Hirschbach are found liable for the accident described in Plaintiffs' Complaints, any recovery in that regard would be the direct and proximate result of the design defects, manufacturing defects and warning defects on the subject products.

220. In the event of a judgment against the Defendants/Third Party Plaintiffs Campbell and/or Hirschbach, and in the favor of the Plaintiffs, Campbell and Hirschbach will be entitled to contribution from Big Tex to the extent that Big Tex's design defects, manufacturing defects and warning defects proximately contributed to cause any damages which are awarded to the Plaintiffs.

WHEREFORE, Defendants/Third Party Plaintiffs, ERIC JEROME CAMPBELL, SR. and HIRSCHBACH MOTORS LINES, INC., pray for entry of a judgment in their favor and against the

Third-Party Defendant, BIG TEX TRAILER MANUFACTURING, LLC. commensurate with its proportionate fault and to the extent permitted by law.

**DEFENDANTS/THIRD PARTY PLAINTIFFS DEMAND TRIAL BY JURY**

Respectfully Submitted,

HIRSCHBACH MOTOR LINES, INC. and
ERIC JEROME CAMPBELL, SR.

By: /s/ Devin M. Taseff
Matthew S. Hefflefinger - ARDC # 6201281
Devin M. Taseff – ARDC # 6333448

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2021, I electronically filed the foregoing Defendants' Third-Party Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Kenneth Levinson
Levinson & Stefani
230 West Monroe Street, Suite 2210
Chicago, IL 60606
ken@levinsonstefani.com
Lead Counsel for Plaintiff Leron Lewis, Jr.

Mr. Ian Brendel
Alexander Shunnarah Trial Attorneys
P.O. Box 2273
Mobile, AL 36652
ibrendel@alexandershunnarahlaw.com
Lead Counsel for Plaintiff Brandon J. Moffett

Mr. Joseph Fried
Mr. Nathan Alexander Gaffney
Fried Goldberg LLC
3550 Lenox Road NE, Suite 1500
Atlanta, GA 30326-4302
joe@friedgoldberg.com
nathan@friedgoldberg.com
brianne@friedgoldberg.com
Co-Counsel for Plaintiff Brandon J. Moffett

/s/ Kelley Yount

HEYL, ROYSTER, VOELKER & ALLEN, PC
P.O. Box 6199
Peoria, Illinois 61601-6199
Telephone 309.676.0400
Primary Email: peoecf@heylroyster.com
mhefflefinger@heylroyster.com; clsmith@heylroyster.com
dtaseff@heylroyster.com; kyount@heylroyster.com
lhall@heylroyster.com; kknipp@heylroyster.com