UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LERON LEWIS, JR, | |
| Plaintiff, | |
| v. | Case No. 3:20-cv-1355-JPG |
| HIRSCHBACH MOTOR LINES, INC. and ERIC JEROME CAMPELL, SR., | |
| Defendants. | |
| BRANDON JAMAL MOFFETT, | |
| Plaintiff, | |
| v. | |
| HIRSCHBACH MOTOR LINES, INC. and ERIC JEROME CAMPBELL, SR., | |
| Defendants/Third Party Plaintiffs, | |
| v. | |
| BRANDON JAMAL MOFFETT, LERON LEWIS, JR., DATWAY LLC, MOTOR CARRIER CONSULTANTS, LLC., J.B. HUNT TRANSPORT, INC., MCGRIFF TIRE, CO., INC., NAVISTAR, INC., BENDIX, COMMERCIAL VEHICLE SYSTEMS LLC, and BIG TEX TRAILER MANUFACTURING, LLC, | |
| Third Party Defendants. | |

## **MEMORANDUM AND ORDER**

### I.     **Introduction**

This matter comes before the Court on various pending motions. *See* Docs. 163, 164,

183, 184, and 197. These motions have been filed by certain Third-Party Defendants. Third-

Party Plaintiffs Hirschbach Motor Lines, Inc. ("Hirschbach") and Eric Jerome Campbell

("Campbell," collectively "Defendants" or "Third-Party Plaintiffs") have filed responses to these

motions.

## II.    Background

This case involves a motor vehicle accident on interstate 57, southbound in Franklin

County on December 13, 2020, around 6:30 a.m. Campbell was driving a tractor-trailer for his

employer Hirschbach. The tractor-trailer collided with the vehicle and trailer that Plaintiffs Leron

Lewis Jr. ("Lewis") and Brandon Moffett ("Moffett," collectively "Plaintiffs") were operating

for their employer Datway, LLC ("Datway"). Lewis filed this suit eight days after the accident

(Doc. 1). Moffett filed suit 22 days after the accident. Their suits were then consolidated (Doc.

25).

On November 15, 2021, Campbell and Hirschbach have filed a Third-Party Complaint

against various entities (Doc. 91):

- Count 1: Negligence and Negligence *per se* against Lewis
- Count 2: Negligence and Negligence *per se* against Moffett
- Count 3: *Respondeat Superior*/Vicarious Liability Against Datway
- Count 4: Negligence Hiring, Retention, and Supervision of Moffett and Lewis against Datway
- Count 5: Negligence and Negligence *per se* against Datway
- Count 6: Negligence against Motor Carrier Consultants ("MCCI")
- Count 7: Joint Enterprise against J.B. Hunt
- Count 8: *Respondeat Superior*/Vicarious Liability against J.B. Hunt
- Count 9: Negligent Hiring, Retention, and Supervision of Datway against J.B. Hunt
- Count 10: McGriff Tire Co., Inc. (Negligence and Negligence *per se*)
- Count 11: Bendix Commercial Vehicle Systems LLC ("Bendix") and Navistar, Inc. ("Navistar") (Negligence)
- Count 12: Bendix and Navistar (strict tort liability)
- Count 13: Big Tex Trailer Manufacturing, LLC. ("Big Tex") (negligence)
- Count 14: Big Tex (strict tort liability)

In short, Campbell was driving the tractor-trailer for his employer Hirschbach and

collided with a vehicle and trailer that Lewis and Moffett were operating for their employer

Datway. Moffett and Lewis sued Campbell and Hirschbach for negligence. Moffett owned the vehicle he and Lewis were operating and Moffett leased it to Datway for the purpose of hauling freight. (Doc. 98 at ¶ 34). Datway hired MCCI to monitor the hours of service and regulation compliance.

Various entities named in the Third-Party Complaint now move this Court to dismiss their third-party claims. Datway moved to dismiss Counts 4 and 5 of Third-Party Plaintiffs' Complaint. (Doc. 163). Third-Party Plaintiffs Campbell and Hirschbach responded and objected. (Doc. 178). Datway replied. (Doc. 182). Later, Datway filed a motion for judgment on the pleadings as to the same Counts 4 and 5. (Doc. 183). No response has been filed in response of that motion.

Motor Carrier Consultants, LLC ("MCCI") also filed a motion for judgment on the pleadings as to Count 6 of the Third-Party Complaint. (Doc. 164). Third-Party Plaintiffs filed a response to the motion (Doc. 179). MCCI filed a reply. (Doc. 185).

J.B. Hunt Transport, Inc. ("J.B. Hunt") also filed a motion for judgment on the pleadings against Third-Party Plaintiffs (Doc. 184). Third-Party Plaintiffs filed its response. (Doc. 192). Additionally, J.B. Hunt filed a motion to strike Third-Party Plaintiffs' response at Doc. 192 because it attached immaterial documents to its opposition. (Doc. 197). Third-Party Plaintiffs opposed that motion. (Doc. 199). The Court takes each motion in turn.

### III.    Analysis

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). The plaintiff "must do more in the complaint than simply recite the elements of a claim." *Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011). Complaints that offer "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

We "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal quotation marks omitted), quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). This is a fine line, though, and it is appropriate to give plaintiffs a chance to amend a complaint to provide more factual detail, as the district court did here after its first dismissal. *Olson v. Champaign Cty., Ill*., 784 F.3d 1093, 1099 (7th Cir. 2015).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937, quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955. A claim should survive a Rule 12(b)(6)

motion to dismiss if the complaint contains well-pled facts—that is, not just legal conclusions—that permit the court to infer more than the mere possibility of misconduct. *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. In deciding or reviewing a Rule 12(b)(6) motion, we do not ask did these things happen; instead, "the proper question to ask is still 'could these things have happened.' " *Carlson v. CSX Transportation, Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (internal citations omitted). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

Rule 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed. "Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party ... is entitled to judgment as a matter of law." *Unite Here Local 1 v. Hyatt Corp*., 862 F.3d 588, 595 (7th Cir. 2017). A district court is confined to matters in the pleadings and must consider the pleadings in the light most favorable to the non-moving party. *Id*. Pleadings include "the complaint, the answer, and any accompanying written instruments attached as exhibits." *Rube v. PartnerRe Ireland Ins. DAC*, 470 F. Supp. 3d 829, 943 (N.D. Ill. 2020) (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998)). Just as the Court does so with a Rule 12(b)(6) motion, the Court accepts all well-pleaded allegations in the non-moving party's pleading as true and draws all inferences in favor of the non-movant. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). In diversity cases, such as this one, federal courts apply state substantive law. *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co*., 796 F.3d 717, 723 (7th Cir. 2015). Here, the parties agree that Illinois law applies.

### a. Datway

As mentioned above, Count 3 of the Complaint asserts a claim of negligence against

Datway under the theory of *respondeat superior*, alleging that Datway, by and through its employment of Lewis and Moffett, was negligent in the same respects as Lewis and Campbell. Count 4 asserts a claim of negligence hiring, retention, and supervision against Datway in respect to its employment of Lewis and Moffett. In Datway's motion, Datway answered Third-Party Plaintiff's complaint where it "admitted that it employed Mr. Lewis and Mr. Moffett at all relevant times and that Mr. Lewis and Mr. Moffett were acting within the scope of their employment at the time of the accident in question." (Doc. 163 at 5); (Doc. 135 at 7). Therefore, Datway admitted to vicarious liability for Lewis and Moffett's alleged negligence under *respondeat superior* and Count 4 of the complaint is duplicative and should be dismissed. Datway now moves under Rule 12(b)(6) or alternatively in Rule 12(c) for this Court to dismiss Count 4.

Third-Party Plaintiffs make multiple arguments in their opposition. First, Third-Party Plaintiffs argue that Datway's motion to dismiss under Rule 12(b)(6) is untimely because Datway has previously answered Counts 3 and 4 of the Third-Party Complaint. However, after Third-Party Plaintiffs filed their opposition brief, Datway filed a motion under Rule 12(c) "in the event the Court finds the [Rule 12(b)(6)] Motion was untimely filed," which remains unopposed by Third-Party Plaintiffs. (Doc. 183). Therefore, the Court will address this motion under Rule 12(c) and not Rule 12(b)(6).[1]

Next, Third-Party Plaintiffs argue that "plaintiffs can maintain direct action against the employer where they plead and prove the employer engaged in its own misconduct *separate and apart* from its employee." (Doc. 178 at 6) (emphasis in original). Third-Party Plaintiffs state a recent Illinois Supreme Court decision in *McQueen v. Green* now allows plaintiffs to maintain

---

[1] In Datway's Rule 12(c) motion, "Datway incorporates the arguments made in its motion to dismiss and reply in support in support of its Motion for Judgment on the pleadings as to Counts IV and V." (Doc. 183 at 2).

claims against both employee and employer, even when the employer has admitted liability pursuant to *respondeat superior*. The court in *McQueen* held "an employer's acknowledgment of vicarious liability for its employee's conduct does not bar a plaintiff from raising a direct negligence claim against the employer[.]" *McQueen v. Green*, 2022 IL 126666, ¶ 60 (Il. Sup. Ct. April 21, 2022). *McQueen* stated that such liability must be "separate and apart from its employee's conduct." *Id*. at ¶ 45; *James v. Kelly Trucking Co.*, 377 S.C. 628, 661 S.E.2d 329, 332 (2008) (finding it to be "a rather strange proposition that a stipulation as to one cause of action could somehow 'prohibit' completely the pursuit of another").

Datway argues that *McQueen* does not apply because it is currently an unpublished opinion and the Illinois rules do not allow unpublished opinions to be given precedential value. Ill. S.Ct. R. 23(e)(1). However, the Illinois Supreme Court rules do allow for unpublished opinions to be given persuasive purposes. Therefore, this Court is persuaded that Illinois courts will now allow direct and vicarious liability actions for negligence entrustment, supervision, retention, training and hiring against employers, even if agency is admitted.

Therefore, the Court looks at the Third-Party Complaint to determine whether or not Third-Party Plaintiff has stated liability that is "separate and apart from the employee's conduct." (Doc. 98). Regarding Count 4, Third-Party Plaintiffs stated the following:

> 69. Datway knew or should have known of both Moffett's and Lewis's incompetency based upon the fact that both Moffett and Lewis were clearly in violation of their Hours of Service pursuant to 49 CFR §395 in the six days prior to the accident.
>
> 70. Datway knew or should have known that Moffett and Lewis were operating defective and dangerous equipment without proper inspections or maintenance.
>
> 71. Had Datway exercised proper due diligence upon hiring and supervising both Moffett and Lewis, they would have known of their aforementioned incompetency.

72. As a direct and proximate result of one or more of the foregoing acts of incompetency, Moffett and Lewis claim injury and damages.

(Doc. 98 at ¶¶ 69-72). The Third-Party Complaint does not adequately allege liability that is separate or apart from Moffett or Lewis' conduct. The above allegations are simply formulaic recitations that *Twombly* cautions against. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. ("[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice."). Third-Party Plaintiffs state that they may have a good faith basis to adequately allege conduct that is separate from the employee. That issue is not before this Court at this point. However, Third-Party Plaintiffs are granted leave to file an amended Third-Party Complaint regarding conduct Datway may have conducted that is separate and apart from the employee's conduct.

The Court **GRANTS** Datway's Rule 12(c) motion (Doc. 183) and **FINDS AS MOOT** Datway's Rule 12(b)(6) motion (Doc. 163). Count 4 of the Third-Party Complaint is dismissed. Third-Party Plaintiffs are granted leave to file an amended Third-Party Complaint consistent with this order.

### b.  MCCI

Next, the Court addresses MCCI Motion for Judgment on the Pleadings (Doc. 164). The Court recently dismissed MCCI from this case in light of a good faith finding of a settlement. *See* Docs. 206 and 210. Having been dismissed from this case, the Court **FINDS AS MOOT** MCCI's motion for judgment on the pleadings (Doc. 164).

### c.  J.B. Hunt

Next, the Court addresses J.B. Hunt's Motion for Judgment on the Pleadings (Doc. 184). Third-Party Plaintiffs alleged in Count 7 that J.B. Hunt participated in a joint enterprise with Datway, and therefore, J.B. Hunt "owned, possessed, and/or controlled" the vehicle and trailer

Moffett and Lewis were operating. (Doc. 98 at ¶ 100, 107). Additionally, in Count 8, Third-Party Plaintiffs wish to hold J.B. Hunt accountable for negligent actions of Datway, Moffett and Lewis on a *respondeat superior* theory. Third-Party Plaintiffs allege J.B. Hunt held and exercised a right to control the conduct, actions, means, and manner of work performed by Datway, Lewis, and/or Moffett. (Doc. 98 at ¶ 124). J.B. Third-Party Plaintiffs also have allegations based on negligent hiring, retention in Count 9 against J.B. Hunt. J.B. Hunt is moving for judgment on the pleadings as to Count 7 and 8. J.B. Hunt filed a motion to strike immaterial documents to exclude three exhibits Third-Party Plaintiffs attached to its opposition.

J.B. Hunt entered into an Outsource Carriage Agreement ("Agreement") with Datway for outsourced transportation services, which is attached to J.B. Hunt's Answer to the Third-Party Complaint as Exhibit A. (Doc. 142 at Ex. A). The Agreement provides that Datway "shall perform any and all services hereunder as an independent contractor." (Doc. 142, Ex. A at ¶ 2.1). Further, the Agreement states no provision in the Agreement "or any act or omission of either party shall be construed for any purpose to express or imply a joint venture, partnership, principal/agent … employer/employee relationship or other such relationship implying a lack of independent operation by" Datway. (Doc. 142, Ex. A, ¶ 2.1). The parties agreed that Datway "shall provide sole supervision and liability for and shall have exclusive control over the operations of its personnel, contractors, subcontractors, and other agents, as well as any and all other vehicles, equipment and property." (Doc. 142, Ex. A, ¶ 2.1). The parties further agreed that J.B. Hunt "shall have no right to discipline or direct the performance of any personnel, contractors, subcontractors, and other" agents of Datway. (Doc. 142, Ex. A, ¶ 2.1).

Additionally, the Agreement requires Datway to look to J.B. Hunt for payment and imposes a $500 fine if Datway seeks payment from J.B. Hunt's customers. *Id.* at ¶ 6.2. In J.B.

Hunt's Answer, it admitted it submitted a Carrier Confirmation (load tender) to Datway, on behalf of J.B. Hunt's customer, for the transport of the customer's freight. *Id*. at Ex. B. The Carrier Confirmation (load tender) provides total payment for the load at issue was $4,000. *Id*. The Carrier Confirmation provides if the driver is late in delivering the shipment, the delivery will be refused or worked in at a later time, but no additional payment will be made to Datway for the time driver has to wait after missing the delivery window. Additionally, Datway agreed to be responsible for driver's fines, citations or penalties. *Id*. The Bill of Lading for the load at issue listed Datway as the carrier. *Id*. at Ex. C. Datway as admitted that Lewis and Moffett were hauling freight in the course and scope of their employment with Datway. (Doc. 98, ¶ 24, 60, and Doc. 135, Answer to ¶ 24, 60). Datway paid unemployment insurance, payroll taxes, compensation, and other employer protections with respect to Lewis and Moffett. (Doc. 142, Ex. A, ¶ 2.2).

### i.     Motion to Strike

First, the Court will address J.B. Hunt's Motion to Strike. Pursuant to Rule 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "When matters outside the pleadings are presented in connection with a Rule 12(c) motion for judgment on the pleadings, the Court may treat the motion as a motion for summary judgment or it may exclude the additional material from consideration." *Swires v. Incredible Scents, Inc*., 2013 U.S. Dist. LEXIS 136294, at 5 (S.D. Ill. 2013). The Court will exercise its discretion and exclude material submitted to this Court outside of pleadings and exhibits to those pleadings. As this Court has noted above, this Court is

confined to the complaint, any answer, any written instruments attached as exhibits. *Rube*, 470 F. Supp. 3d at 943. The Seventh Circuit has been generally liberal in its approach to consider documents in which the complaint had referred. *Hecker v. Deere & Co*., 556 F.3d 575, 582 (7th Cir. 2009). Therefore, the Court will not treat this motion for a motion for summary judgment at this time.

Third-Party Plaintiffs argue that because J.B. Hunt attached documents extrinsic to the Agreement (i.e. Carrier Confirmation, Agreement), the Court should consider extrinsic evidence in its support "out of fairness and equity." (Doc. 192 at ¶ 10). The Court disagrees. The exhibits that J.B. Hunt refers were attached exhibits to the pleading, namely their answer to the Third-Party Complaint, which the parties may rely upon, and the Court can consider under a Rule 12(c) motion. For this reason, the Court will **GRANT** J.B. Hunt's Motion to Strike (Doc. 197) and will not consider the FMCSA Company Snapshot, J.B. Hunt's Response to Requests for Production, and Rule 37 Correspondence exchanged between the parties. (Doc. 192, Ex. A, B, C). These exhibits are improperly outside the scope of the pleadings or exhibits to pleadings. Therefore, the Court will exercise its discretion and not convert this matter to a summary judgment motion under Rule 56.

### ii.    Joint Enterprise Liability

The Court next addresses the substance of J.B. Hunt's 12(c) motion. J.B. Hunt first argues that judgment should be entered on Count 7 alleging joint enterprise liability because the pleadings and exhibits demonstrate J.B. Hunt was not in a joint enterprise with Datway. (Doc. 184 at 6-7). Third-Party Plaintiffs argue that while the Agreement, Carrier Confirmation, Bill of Lading suggest an independent contractor relationship, there is a genuine factual issue as to whether J.B. Hunt maintained the requisite separation to maintain such status at all relevant

times, and whether additional, extrinsic terms governed their business relationship." (Doc. 192 at ¶ 5).

A joint venture is an association of two or more entities to carry out a single, specific purpose for a profit. *Kaporovskiy v. Grecian Delight Foods, Inc.*, 338 Ill.App.3d 206, 211, 272 Ill.Dec. 453, 787 N.E.2d 268 (2003). Whether a joint venture exists is a matter of the intention of the alleged joint venturers. *Kaporovskiy*, 338 Ill.App.3d at 211, 272 Ill.Dec. 453, 787 N.E.2d 268. Even in the absence of a formal agreement, the existence of a joint venture may be inferred from circumstances demonstrating that the parties intended to enter into a joint venture. *O'Brien v. Cacciatore*, 227 Ill.App.3d 836, 843, 169 Ill.Dec. 506, 591 N.E.2d 1384 (1992). In evaluating that intent, courts look to the following elements: (1) an express or implied agreement to carry on an enterprise; (2) a demonstration of intent to be joint venturers; (3) a community of interest, as reflected in the contribution of property, money, effort, skill, or knowledge; (4) a measure of joint control and management of the enterprise; and (5) sharing of profits and losses. *Hiatt v. W. Plastics, Inc.*, 2014 IL App (2d) 140178, ¶ 73, 36 N.E.3d 852, 865–66. "The party who contends that a joint venture exists has the burden of proving that the parties intended such a relationship." *Yokel v. Hite*, 348 Ill.App.3d 703, 708, 284 Ill.Dec. 155, 809 N.E.2d 721 (2004). In the absence of any one of the elements, a joint venture does not exist. *O'Brien*, 227 Ill.App.3d at 843, 169 Ill.Dec. 506, 591 N.E.2d 1384. Ordinarily, the existence of a joint venture is a question of fact for the trier of fact. *Hiatt*, 2014 IL App (2d) 140178, ¶ 73.

In short, J.B. Hunt argues neither the Agreement nor Carrier Confirmation (load tender) gives any indication the parties intended to engage in a joint venture. (Doc. 184 at 10). Here, J.B. Hunt argues the Agreement shows Datway was an independent contractor of J.B. Hunt and not engaged in any joint venture. Additionally, the Agreement itself states no provision in the

Agreement shall be construed as or imply a joint venture, and neither the Agreement nor Carrier Confirmation (load tender) provided for any sharing of profits and losses. J.B. Hunt points out that the Carrier Confirmation (load tender) provides J.B. Hunt will pay Datway $4,000 to transport the load at issue, and if Datway loses or damages the cargo, Datway will bear the resulting financial loss. Additionally, Datway incurs any fines related to drivers' citations while transporting the load.

Third-Party Plaintiffs argue that there is a material issue based on the pleadings because J.B. Hunt has denied material allegations on the negligence, joint enterprise and *respondeat superior* theories. (Doc. 192 at ¶ 4). In its support, they argue the Agreement "requires that unless otherwise approved, Datway must carry a 'satisfactory' safety rating with the Federal Motor Carrier Safety Administration (FMCSA) to haul freight in interstate commerce on behalf of, or in concert with, JB Hunt." Third-Party Plaintiffs attach a FMCSA Company Snapshot which they argue shows "Datway has never held a FMCSA safety rating and, therefore, was arguably unqualified to haul for JB Hunt 'unless otherwise approved.'" (Doc. 192 at ¶ 6). Third-Party Plaintiffs therefore argue the Court must convert the instant Rule 12(c) motion to a motion for summary judgment under Rule 56. *Id*. at ¶ 8. The Court will not do so for the reasons above.

Third-Party Plaintiffs argue that the pleadings indicate the elements of joint enterprise are met in the Third-Party Complaint. Count 7 alleges:

> (a) The right to impose fines;
> (b) The right to control the type and quality of equipment to be used;
> (c) To accept or reject drivers;
> (d) The right to require check calls;
> (e) The right to control the time and place of delivery;
> (f) The right to restrict and/or prohibit re-brokering;
> (g) The right to control the driver(s);
> (h) The right to control the manner of loading and unloading; and
> (i) The right to prohibit Datway from re-brokering the load.

(Doc. 98 at ¶ 110). Additionally, the allegations in the next paragraph state Datway was negligent for the following:

> (a) Requiring Datway, Lewis, and/or Moffett to remain in frequent contact with J.B. Hunt;
> (b) Managing the load from the point of hiring Datway, Lewis, and/or Moffett until the time of the December 13, 2020 accident;
> (c) Performing a logistics function for the transportation of the load; and
> (d) Accepting liability for the load it owned from the time of hiring Datway, Lewis, and/or Moffett to the time of the December 13, 2020 accident.

(Doc. 98 at ¶ 111).

First, the Court addresses the Agreement, which expressly states Datway is an independent contractor and not engaged in a joint venture with J.B. Hunt. While not dispositive, this Court finds this statement as strong evidence of the parties' intent. *See e.g. Kaporovskiy v. Grecian Delight Foods, Inc*., 338 Ill. App. 3d 206, 212, 787 N.E.2d 268, 273 (2003) (existence of agreement can be inferred based on facts and circumstances where agreement did not contain anything indicating either party intended to engage in a joint venture).

Specifically, Third-Party Plaintiffs state the Agreement shows they were engaged in joint enterprise for monetary benefit with intent and purpose to earn a profit, which meets the express or implied agreement of joint enterprise. (Doc. 192 at ¶ 17). Further, it states its allegations that J.B. Hunt "benefited monetarily" meets the second element or demonstration of intent to carry on as a joint enterprise. *Id*. at ¶ 18. Further, Third-Party Plaintiffs state there is a community of interest because J.B. Hunt "owned, possessed, or controlled" the vehicle at issue. *Id*. at ¶ 19. Additionally, they state the allegations in the Third-Party Complaint (Doc. 98 at ¶ 111) indicate a measure of joint control and management of enterprise.

Third-Party Plaintiffs do not even address the parties' agreement which states Datway is not engaged in a joint venture with J.B. Hunt. Second, Third-Party Plaintiffs' arguments and allegations are far too general to compete with J.B. Hunt's specific exhibits. Instead of an

express or implied agreement for a joint venture, here the Agreement states the parties expressly are not in a joint enterprise. The Court believes the express language of the agreement defeats the first and second elements above, which is the demonstration of intent to be in a joint enterprise.

Additionally, Third-Party Plaintiffs' arguments do not show how the allegations in paragraph 111 indicate joint control or management of enterprise. First, the exhibits contradict some of the allegations in the Third-Party Complaint. "It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." N. *Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998). First, the Agreement dictates that that Datway "shall provide sole supervision and liability for and shall have exclusive control over the operations of its personnel, contractors, subcontractors, and other agents, as well as any and all other vehicles, equipment and property." (Doc. 142, Ex. A, ¶ 2.1). This Agreement contradicts paragraph 111(d). The Court does not believe how frequent contact, managing the load, or performing logistics functions, indicates joint control. (Doc. 98 at ¶ 111(a)-(c)). Regardless, the Court believes the Agreement contradicts Third-Party Plaintiffs' claims.

Next, the Court believes the Agreement and Carrier Confirmation (load tender) do not indicate there was a sharing of profits or losses. The Carrier Confirmation (load tender) provides J.B. Hunt will pay Datway $4,000 to transport the load, and if Datway damages the cargo, it will bear the financial loss. (Doc. 142, Ex. A, ¶ 10.1; Ex. B). Additionally, Datway incurs any fines related to drivers' citations while transporting the load. These agreements between the parties do not show any profit sharing.

Even though the existence of a joint venture is typically a question of fact, the Court finds that the agreements between the parties demonstrate the parties intended there was no joint

venture. The absence of even one element defeats the existence of a joint venture. Even providing Third-Party Plaintiffs all reasonable inferences in their favor, the Court finds that there was no demonstration of a joint venture. The Court GRANTS J.B. Hunt's Motion Judgment in favor of J.B. Hunt on Count 7.

### iii.    *Respondeat Superior* **Liability**

Count 8 of the Third-Party Complaint alleges *respondeat superior* because J.B. Hunt is an agent of Datway. J.B. Hunt argues that Datway is an independent contractor and there is no agency relationship between Datway and J.B. Hunt.

Under Illinois law, deciding whether an agency relationship exists requires a multifactor analysis. The "cardinal consideration" for determining the existence of an agency relationship is whether the alleged principal has the "right to control the manner of work performance." Other considerations include whether the nature of the work is in the principal's field, whether the principal has the right to discharge the purported agent, the method of payment and whether taxes are deducted, the provision of equipment, and the level of skill required. Though no single factor controls, and weighing them is typically a question of fact, a court may decide the question if the underlying facts are not disputed. *Kolchinsky v. W. Dairy Transp., LLC*, 949 F.3d 1010, 1013 (7th Cir. 2020) (internal citations omitted and cleaned up).

Third-Party Plaintiffs argue that the underlying factors show that Datway, Lewis, and/or Moffett were acting as apparent agents of J.B. Hunt, who held and exercised a right to control actions, methods, means, and manner of work performed by Datway, Lewis and/or Moffett. (Doc. 98 at ¶¶ 110-111, 124). Again, here, Third-Party Plaintiffs do not respond to the allegations in the Agreement which states Datway is an independent contractor.

First, the Agreement between J.B. Hunt and Datway provides "shall perform any and all

services hereunder as an independent contractor." (Doc. 142, Ex. A, ¶ 2.1). It further provides no provision shall construe a principal/agent or employer/employee relationship. *Id*. It further provides Datway "shall provide sole supervision and liability" and "exclusive control over operations of its personnel, contractors, subcontractors…" *Id*. additionally it states J.B. Hunt has no right to "discipline or direct the performance of any personnel, contractors, subcontractors, and other" agents of Datway. *Id*.

Of course, this agreement is not dispositive because the Court must focus instead on the right and manner of control. Datway has answered that it employed Lewis and Moffett, the drivers of the hauling freight at issue. (Doc. 98, ¶ 24, 60, and Doc. 135, Answer to ¶ 24, 60). Further, Datway has admitted each driver submitted application for employment with Datway. (Doc. 98, ¶ 29-31, and Doc. 135, Answer to ¶ 29-31). These pleadings provide no direct relationship with J.B. Hunt that is alleged in the Third-Party Complaint. As addressed above, when a written instrument contradicts the complaint, the written instrument trumps. N. *Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 454.

Additionally, Datway agreed to pay payroll taxes, unemployment insurance, pensions, workers compensation, social security, and other protections for Lewis and Moffett. (Doc. 142, Ex. A, ¶ 2.2). Third-Party Plaintiffs argue that the pleadings are issue as to whether J.B. Hunt directly paid Datway, Lewis or Moffett for the transportation of the load in question. The Court disagrees. The Agreement indicates Lewis and Moffett were employees of Datway and were paid by Datway. Additionally, Datway was responsible for routing and delivering the load, and provided its own equipment, insurance, and permits.

The Court finds that based on the answers and exhibits attached to the pleadings that Datway was an independent contractor and not an agent of J.B. Hunt.

### iv. Apparent Authority

Third-Party Plaintiffs also claim that Datway, Lewis and Moffett were acting as the apparent agents of J.B. Hunt. (Doc. 98, ¶ 124). Third-Party Plaintiffs respond Count 7 and 8 show Datway, Lewis and/or Moffett were acting as apparent agents of J.B. Hunt where J.B. Hunt held and exercised a right to control the conduct and work by Datway, Lewis and/or Moffett. (Doc. 192 at ¶ 26). The Third-Party Complaint makes no allegations where a Court could "create an inference that their injuries would not have occurred "but for [their] justifiable reliance on the apparent agency." This passing reference to apparent authority in the Third-Party Complaint is not enough.

### IV.   Conclusion

The Court hereby:

- **GRANTS** Datway's Rule 12(c) motion (Doc. 183) and **DISMISSES** Count 4 without prejudice;

- **FINDS AS MOOT** Datway's Rule 12(b)(6) motion (Doc. 163). Third-Party Plaintiffs are granted leave to file an amended Third-Party Complaint consistent with this order;

- **FINDS AS MOOT** MCCI's motion for judgment on the pleadings (Doc. 164);

- **GRANTS** J.B. Hunt's Rule 12(c) Motion (Doc. 184) and **DISMISSES** Counts 7 and 8 without prejudice;

- **GRANTS** J.B. Hunt's Motion to Strike Immaterial Documents (Doc. 197).

**IT IS SO ORDERED.**
**Dated: October 20, 2022**

<u>/s/ J. Phil Gilbert</u>
**J. PHIL GILBERT**
**DISTRICT JUDGE**