

Michael S. McGrory

(312) 455-3902

mmcgrory@amundsendavislaw.com

January 22, 2025

*VIA EMAIL*

Mr. Matthew Hefflefinger
Mr. Devin Taseff
Chartwell Law
7707 N. Knoxville Avenue
Suite 201-A
Peoria, IL 61614

> **RE:**  *Lewis, et al. v. Hirschbach Motor Lines, et al.*
> **Southern District of Illinois Case No. 3:20-cv-01355**
> **AD Matter No. 3050986**

Dear Matt & Devin:

It has come to our attention that your client, Hirschbach Motor Lines, in conjunction with others, has filed a purported class action complaint against Bendix, Navistar, and Paccar, Inc. in the Northern District of Illinois. We believe that the class action complaint demonstrates that you and/or your client have violated the Agreed Confidentiality Order in this case. Our intention is to seek the severest possible sanctions for these violations under Rule 37(b). However, we recognize such motions can make litigation more contentious and erode the working relationship between adverse attorneys. Therefore, we thought it prudent to explain our position via letter in advance of seeking sanctions, and to invite you to explain why or how we might be mistaken.

## Confidentiality Order

On June 14, 2021, before HML brought Bendix into this case, the Court entered an Agreed Confidentiality Order. Bendix was not a party to this litigation at the time of the Order's entry. Once Bendix did become a party, HML circulated an "Acknowledgement

and Agreement" to be bound by the Confidentiality Order. Bendix signed the Acknowledgement, and on May 18, 2022, the Court entered an "Agreed Order for Third Party Defendants to Acknowledge and Be Bound by Confidentiality Order."

It is our understanding that you drafted the Confidentiality Order, and would therefore be very familiar with the terms. So, as you know, the Confidentiality Order applies to all discovery materials designated as "confidential," as well as information derived from those materials. The Order on its terms is binding on all counsel and their law firms, the parties, and other persons subject to the Order. As you noted in Third Party Defendants Acknowledgement you drafted, "violation of the Confidentiality Order may result in penalties for contempt of court."

The Order states: "Confidential Information shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in subparagraph (b) for any purpose whatsoever other than in this litigation, including any appeal thereof." The people permitted to review Confidential Information under Paragraph 5(b) are:

- Counsel;
- Parties;
- The Court;
- Court reporters;
- Contractors who make copies of or process documents;
- Consultants and experts (but only after they have agreed to be bound to the Confidentiality Order);
- Witnesses at depositions;
- The author or recipient of the confidential document; and
- Others with the written consent of the party that produced the confidential document or pursuant to court order.

The Confidentiality Order also sets out the procedures by which one can file a confidential document with the Court and challenge one party's designation of a document as "confidential."

**<u>Confidential Information/Materials Disclosed in Discovery</u>**

Bendix has produced thousands of pages in discovery to HML. Much of the



production includes confidential documents related to Bendix's design and testing of the Wingman Fusion system. Bendix explicitly designated each page of this material as "CONFIDENTIAL." This information also qualifies as "trade secrets" under both the Federal Defend Trade Secrets Act (18 USC § 1839(3)) and the Illinois Trade Secrets Act (765 ILCS § 1065/2(d)).

You, on behalf of HML, have also taken advantage of the protections afforded by the Court's Confidentiality Order. For example, HML made 51 designations of "confidential" relative to the its Rule 30(b)(6) deposition.

The most immediate concern is Bendix's production of email correspondence from April and July 2015 that related to results of certain Wingman Fusion system testing and demonstrations and analyses thereof. (BCVS 05455-05456 and BCVS 05776-05781). These documents contain Confidential Information and were marked "CONFIDENTIAL." Bendix also produced an internally generated table comparing certain specifications of the Wingman Fusion system to competitor products. (BCVS 05774). This document, too, contains Confidential Information and was marked "CONFIDENTIAL."

HML has not challenged any of Bendix's "CONFIDENTIAL" designations, and has not sought court action that would relieve HML of its obligations under the Confidentiality Order.

### HML's Purported Class Action Lawsuit

The class action complaint you filed on behalf of HML contains factual allegations that describe and disclose Bendix's Confidential Information as derived directly from documents marked "CONFIDENTIAL." HML alleges in the Class Action Complaint:

34.   During product development and/or testing of the Bendix Wingman Fusion System, on or about April 2, 2015, Navistar performed independent test drives of power units equipped with the Bendix Wingman Fusion System.

35.   During the testing, the Bendix Wingman Fusion System failed to detect a stationary pickup truck/utility trailer combination ahead of the Navistar power unit 30-50 percent of the time, resulting in the

complete failure of its Autonomous Emergency Braking system to engage in each instance.

36.     On or about the same date, Navistar sent correspondence to Bendix documenting the detection and braking failures to William Amato who was the Lead engineer for the Bendix Wingman Fusion System.

37.     Despite having actual knowledge of these detection and braking failures, Bendix…classified the issue as "benign" in internal memoranda….

38.     On or about July 2015, Navistar sent email correspondence to Bendix representatives with additional complaints regarding the performance of the Bendix Wingman Fusion System, including but not limited to het radar cone of vision being too narrow, necessitating the target vehicle ahead to be positioned directly in front of the radar senor to be properly detected and alerted to the same.

39.     On or about October 2015, Bendix performed a competitor comparison of then-existing FCA systems in the marketplace, including but not limited to the Detroit Assurance 2.0-4.0 and/or Meritor WABCO OnGuard Collision systems.

These allegations contain Bendix's Confidential Information directly from the aforementioned emails and internal analyses, all of which were marked and produced as "CONFIDENTIAL."

### Apparent Violations of Confidentiality Order

The Confidentiality Order is clear that no party may use or disclose Confidential Information "for any purpose whatsoever *other than in this litigation*…" Given the allegations asserted in HML's class action complaint, it appears that you and/or HML used and disclosed Confidential Information produced in this litigation for purposes of other litigation, to wit, the purported class action suit.



It would also appear that you and/or HML disseminated this Confidential Information to persons who were not entitled to receive it under the Confidentiality Order. There are seven other plaintiffs in the class action case, as well as other counsel; for them to sign onto that complaint in good faith, you and/or HML must have shared information from the documents marked "CONFIDENTIAL," if not the documents themselves.

## Conclusion

From our perspective, this looks really bad. We do not want to go down the path of seeking sanctions, though, if we are mistaken. That would be a waste of everyone's time and unnecessarily add to the contentiousness of this matter. If we are wrong, or if you have some other explanation for the apparent violations of the Confidentiality Order, we ask that you please provide us with the explanation. Otherwise, we feel we have no alternative but to pursue sanctions.

Absent a reasonable explanation, our current plan is to file a motion for sanctions with in 14 days. Thus, we ask that you respond to this letter at your earliest convenience, and no later than two weeks from today.

Very truly yours,

Michael S. McGrory
Amundsen Davis LLC
mmcgrory@amundsendavislaw.com
(312) 455-3902



**MATTHEW HEFFLEFINGER, ESQUIRE**
Direct Dial: (309) 450-5763
mhefflefinger@chartwelllaw.com

**DEVIN TASEFF, ESQUIRE**
Direct Dial: (309) 256-3628
dtaseff@chartwelllaw.com

**Reply To: Peoria Office**
7707 N. Knoxville Avenue, Suite 201-A
Peoria, IL  61614
Facsimile: (610) 666-7704

February 5, 2025

Mr. Michael McGrory
Ms. Emily Schroeder
SmithAmundsen
150 N. Michigan Avenue, Suite 3300
Chicago, IL  60601
mmcgrory@salawus.com
eschroeder@salawus.com

Mr. Adam T. Suroff
Swanson Martin & Bell
800 Market Street, Suite 2100
St. Louis, MO  63101
asuroff@smbtrials.com

IN RE:  Our file:        43001.0096368
        Accident of December 13, 2020 – Hirschbach Motor Lines, Inc.
        Brandon Jamal Moffett/Leron Lewis, Jr.

Dear Counsel:

This correspondence is to serve as Hirschbach's response to Bendix's Sanctions Letter dated January 22, as well as Bendix and Navistar's recent correspondences regarding Hirschbach's propounding of its Third Requests to Produce on January 17.

### Response to Bendix's Sanctions Letter

Bendix takes the position that the following class action complaint allegations constitute violations of the Agreed Confidentiality Order granted and denied in part by the Court on June 14, 2021 (ECF Doc. 78):

- During product development and/or testing of the Bendix Wingman Fusion System, on or about April 2, 2015, Navistar performed independent test drives of power units equipped with the Bendix Wingman Fusion System;

Our File:  43001.0096368
February 5, 2025
Page 2

- During the testing, the Bendix Wingman Fusion System failed to detect a stationary pickup truck/utility trailer combination ahead of the Navistar power unit 30-50 percent of the time, resulting in the complete failure of its Autonomous Emergency Braking system to engage in each instance;

- On or about the same date, Navistar sent correspondence to Bendix documenting the detection and braking failures to William Amato who was the Lead engineer for the Bendix Wingman Fusion System;

- Despite having actual knowledge of these detection and braking failures, Bendix classified the issue as "benign" in internal memoranda;

- On or about July 2015, Navistar sent email correspondence to Bendix representatives with additional complaints regarding the performance of the Bendix Wingman Fusion System, including but not limited to the radar cone of vision being too narrow, necessitating the target vehicle ahead to be positioned directly in front of the radar senor to be properly detected and alerted to the same;

- On or about October 2015, Bendix performed a competitor comparison of then-existing FCA systems in the marketplace, including but not limited to the Detroit Assurance 2.0-4.0 and/or Meritor WABCO OnGuard Collision systems.

(*Hirschbach Motor Lines v. Bendix Commerical Vehicle Systems, Inc. et al.*, (Northern District of Illinois Case No. 1-24-cv-11979, ECF Doc. 1 at ¶¶ 34-39).

Bendix's argument is that the above allegations constitute disclosure of confidential information and trades secrets of Bendix outside the litigation in question, and believes it is entitled to the "severest of sanctions" as a result. We respectfully and fundamentally disagree with these positions per a cursory review of the terms of the Confidentiality Order, and encourage Bendix to reconsider its strategy here and focus on defending the merits of both this case and the class action.

First, with respect to "Confidential Information," the Agreed Confidentiality Order is clear that "Information or documents that are available to the public may not be designated as Confidential Information." (Agreement, Section 2). The class action complaint allegations in question have been a matter of public record since the filing of our Fourth Amended Third-Party Complaint in the contribution action on September 26, 2024, over four months ago, and were copied verbatim from said pleading. (ECF Doc. 292 at ¶¶ 36-40).

As you know, federal court pleadings are publicly accessible on PACER from the moment they are filed, and there was no objection by Bendix then regarding the filing of our amended pleading in the contribution case, nor has there been one since, as the objection in question is directed solely toward the filing of the class action complaint. The class action allegations in question were taken

Our File:  43001.0096368
February 5, 2025
Page 3

verbatim from Paragraphs 36-40 of the Fourth Amended Third-Party Complaint, which this Court granted us leave to file after denying Bendix's Motion to Dismiss. (ECF Doc. 291). If Bendix had genuine confidentiality concerns regarding these allegations, the time to assert them was within a reasonable time period after the filing of the Fourth Amended Third-Party Complaint on September 27, 2024, and the method to assert them was to move to seal the Fourth Amended Third-Party Complaint. Bendix did neither.

Instead, Bendix only raised confidentiality concerns after the same allegations were filed verbatim in a class action complaint regarding the same product. This clearly demonstrates Bendix's true motives here: to arbitrarily discredit the merits of these allegations in both cases, particularly Bendix's actual knowledge of significant failures to detect the very pickup truck-utility trailer configuration its system encountered in this accident, along with its subsequent decision to do nothing in order to protect its scheduled launch date.

Furthermore, on the issue of trades secrets, Bendix's argument is wholly invalid. Contrary to Bendix's position, the Court explicitly denied entry of the Agreed Confidentiality Order with respect to trades secrets. (ECF Doc. 78). Specifically, the Court stated the following in its Order:

> Defendants failed to sufficiently demonstrate that good cause exists for including the categories of "information that reveals trade secrets" and "research, technical, commercial or financial information that the party has maintained as confidential" as subject to the attached Protective Order. Fed. R. Civ. P. 27(c); *Citizens First Natl. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999).The Court therefore DENIES WITHOUT PREJUDICE their request to include such categories in the attached Order.

The Parties never moved subsequent to the Order to include such categories in an Amended Confidentiality Order. We also disagree with the trade secrets position as a matter of substance. Under the federal Defend Trade Secrets Act (hereinafter the "DTSA"), 18 U.S.C. § 1839(3), the term "trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if: (A) the owner thereof has taken reasonable measures to keep such information secret; AND (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."

It is Hirschbach's position that the above class action complaint allegations do not derive independent economic value from not being generally known and, therefore, do not qualify as trade secrets. This is not a situation where Hirschbach has leaked underlying Wingman Fusion product development or testing documents, and/or the technical data generated from the same, such that Bendix's competitors could utilize the same in crafting a better, safer collision avoidance

Our File:  43001.0096368
February 5, 2025
Page 4

system. Rather, Hirschbach has made specific, material allegations towards Bendix's actual knowledge of defects in the Wingman Fusion System, and its subsequent decision not to fix them before launching the product, and failing to disclose said defects to motor carrier customers like Hirschbach thereafter. These facts will of course be argued in future court filings including but not limited to Motions for Summary Judgement, and would become a matter of public record anyway by virtue of the PACER system. Bendix will have to deal with the merits of the case one way or another in the near future, which are becoming increasingly disadvantageous as discovery continues.

Therefore, there is no cognizable injury to Bendix in terms of alleged breach of confidentiality and/or disclosure of trades secrets here. The irony of Bendix's sanctions position is that these allegations were only filed because Bendix filed a Motion to Dismiss the Third Amended Third-Party Complaint, arguing that Hirschbach had failed to plead sufficient facts to plausibly show a defect in the Wingman Fusion System. Had Bendix not filed such a Motion, there would have been no reason for Hirschbach to publicly make these direct, targeted allegations of Bendix's actual knowledge of significant defects in its product that are precisely on point to the factual circumstances of this accident, and we would have simply proceeded with the Third Amended Third-Party Complaint.

Overall, we see the threat of sanctions as a sideshow at best, and desperation at worst. We believe the Court will see it similarly.

## BENDIX AND NAVISTAR OBJECTIONS TO HIRSCHBACH'S THIRD REQUESTS TO PRODUCE

Both Bendix and Navistar have objected to answering Hirschbach's Third Requests to Produce on grounds of timeliness, both asserting the Scheduling Order deadline of November 15, 2024 to issue written discovery on the additional allegations raised by the Fourth Amended Third-Party Complaint. (ECF Doc. 297). Bendix has further objected to the substantive scope of the requests.

The requests to produce in question, particularly those that identify specific documents in Bendix's production to date, and including those that are the subject of Bendix's sanctions letter, are narrowly tailored to Bendix's and Navistar's actual or constructive knowledge of both product defects and reasonably feasible alternative designs, based primarily on Bendix's own document production, particularly the Bendix-Navistar email communications that are the subject of Bendix's sanctions letter. These issues are on point with what Hirschbach must diligently investigate and prove to recover in the contribution action, and cannot be defined so narrowly as relating solely to the additional allegations raised by the Fourth Amended Complaint.

The Court was clear in its order denying the motion to dismiss that "while it is true that discovery has been extensive, to the Court's knowledge, neither of the parties have exchanged discovery pertaining to the Wingman System's construction, design, or programming." (ECF Doc. 291). A fair reading of our requests to produce demonstrates that they are directly in line with the Court's reasoning. Our Third Request to Produce gets to the very heart of the issues the Court acknowledged were important to the merits of the controversy.

Our File:  43001.0096368
February 5, 2025
Page 5

The substance of the Third Requests to Produce will certainly be explored at the depositions of both Bendix's and Navistar's witnesses. Should we not get responses to the Third Requests to Produce before taking these depositions, the policy behind full and fair discovery will be thwarted. If these depositions are then taken without receiving responses in advance, we will likely have to issue them again after the depositions are completed. It seems very impractical to delay the discovery of the Third Requests to Produce, given that it is only going to operate to delay things even more. By dealing with these discovery requests now, however, the Parties will inevitably save time in completing discovery and getting to the core merits of the case, which is precisely what Bendix and Navistar purport to want by objecting to this discovery as untimely.

While it is true that Hirschbach issued these requests outside the timeframe contemplated by the Scheduling Order for written discovery on the additional allegations of the Fourth Amended Complaint, Bendix tendered its Third Request to Produce 12 days after the deadline of November 15, 2024, the day before Thanksgiving. Navistar has made no such additional requests of its own, so the same timeliness objection would rationally apply to Bendix's Third Request to Produce to Hirschbach and any further written discovery issued by Navistar to Hirschbach in the future.

Given the importance of the issues implicated by the requests to produce in question, we believe that the Court will allow us to explore, at the very least, the more targeted requests raising narrow questions regarding specific documents Bendix has already provided in discovery. With this in mind, a discovery conference among counsel is warranted, and should be completed before Bendix or Navistar attempt any Motions for Protective Order or other discovery motions, as it is required here per Rule 37. We will make ourselves available for such call when convenient in the immediate future.

Very truly yours,

**CHARTWELL LAW**

By: _____

Matthew S. Hefflefinger

Devin M. Taseff

MSH/dmt