**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT ILLINOIS**

| | |
|---|---|
| LERON LEWIS, JR, | ) |
| | ) |
|       Plaintiff, | )     No. 3:20-CV-1355-RJD |
| | )     Lead Case |
| v. | ) |
| | ) |
| HIRSCHBACH MOTOR LINES, INC. and ERIC | ) |
| JEROME CAMPBELL, SR., | ) |
| | ) |
|       Defendants. | ) |
| | ) |
| BRANDON JAMAL MOFFETT, | ) |
| | ) |
|       Plaintiff, | )     No. 3:21-CV-0001-RJD |
| v. | ) |
| | ) |
| HIRSCHBACH MOTOR LINES, INC. and ERIC | ) |
| JEROME CAMPBELL, SR., | ) |
| | ) |
|       Defendants. | ) |
| _____ | ) |
| HIRSCHBACH MOTOR LINES, INC. and ERIC | ) |
| JEROME CAMPBELL, SR., | ) |
| | ) |
|       Defendants/Third Party Plaintiffs, | ) |
| | ) |
|     v. | ) |
| | ) |
| BRANDON JAMAL MOFFETT, LERON LEWIS, JR., | ) |
| DATWAY LLC, MOTOR CARRIER CONSULTANTS, | ) |
| LLC., J.B. HUNT TRANSPORT, INC., MCGRIFF TIRE | ) |
| CO., INC., NAVISTAR, INC., BENDIX | ) |
| COMMERCIAL VEHICLE SYSTEMS LLC, and | ) |
| BIG TEX TRAILER MANUFACTURING, LLC, | ) |
| | ) |
|       Third Party Defendants, | ) |

**DEFENDANTS/THIRD-PARTY PLAINTIFFS,**
**HIRSCHBACH MOTOR LINES AND ERIC JEROME CAMPBELL, SR.'S**
**RESPONSE TO THIRD-PARTY DEFENDANT, BENDIX COMMERCIAL VEHICLE**
**SYSTEMS, LLC'S RULE 37(B) MOTION FOR SANCTIONS**

NOW COME Defendants/Third-Party Plaintiffs, HIRSCHBACH MOTOR LINES, INC.

and ERIC JEROME CAMPBELL, SR., by MATTHEW S. HEFFLEFINGER and DEVIN M.

TASEFF of CHARTWELL LAW OFFICES, and for their Response to Bendix Commercial Vehicle Systems, LLC's Rule 37(b) Motion for Sanctions (ECF Doc. 389), state as follows:

## INTRODUCTION AND FACTUAL BACKGROUND

1.    This contribution case arises from a motor vehicle accident occurring on December 13, 2020, on Interstate 57 southbound between a Navistar International LT625 tractor operated by Mr. Campbell on behalf of Hirschbach, and a stationary pickup truck and utility trailer combination hauling two shipping containers parked within Mr. Campbell's lane of travel. The tractor in question was equipped with a Bendix Wingman Fusion collision avoidance system, which Hirschbach alleges a catastrophic failure in product liability to detect, alert to, and apply the autonomous braking system to avoid or mitigate the ensuing accident in contradiction to Bendix's and Navistar's sales representations to Hirschbach as to its performance capabilities. (ECF Doc. 292)

2.    In the course of discovery, Bendix has disclosed a wealth of material evidence, both through the production of documents and deposition testimony obtained from its personnel, establishing its actual knowledge, in advance of launching the product in May 2015, of a myriad of severe performance defects in the Wingman Fusion System, of which its marketing and sales strategies for customers including Hirschbach was deliberately designed to conceal. As a practical matter, based on Bendix's own written communications, documents, and testimony of its personnel, Bendix knew of these defects and the dangerous risks they posed to the motoring public, proceeded to weigh the costs of delaying their launch date, and ultimately chose to conceal them in their marketing materials targeting national motor carriers including Hirschbach.

3.    Accordingly, in investigating these defects for the purpose of prosecuting this underlying contribution case, Hirschbach discovered that it was the victim of a much greater, fraudulent conspiracy against not only Hirschbach, but the trucking industry at large. In an exercise of their consumer rights, having been fraudulently induced into purchasing an inferior collision mitigation system for their tractor fleets, Hirschbach and other motor carriers similarly situated have filed in good faith a separate lawsuit in the Northern District of Illinois, the Second Amended Complaint of which merely states the known, material facts required to adequately plead fraud with requisite particularity under *Twombly/Iqbal*, Rule 9(a), as was ordered by presiding Judge Thomas Durkin in his order granting defendants' Rule 12(b)(6) Motions to Dismiss with leave to replead. (NDIL Case No. 1-24-cv-11979, ECF Docs. 114).

4.    In response to the filing of the second amended complaint in said action, Bendix now moves for the harshest of Rule 37 sanctions available against Hirschbach and Mr. Campbell in this case, including dismissal of their contribution claims, precluding their use of material evidence at trial, and awarding attorney's fees. (ECF Doc. 389). The crux of Bendix's argument is that its trade secrets have been publicly disclosed by virtue of these material allegations of fraud being made in the Second Amended Complaint with particularity, in purported violation of the Parties' Agreed Confidentiality Order governing discovery in this case. (*Id.,* ECF Doc. 78). Bendix has now cancelled all remaining depositions of their company personnel indefinitely, of which the Parties previously agreed to, and to which Hirschbach and Mr. Campbell sent proper notice.

5.    Bendix's Motion omits, however, that this Court previously ruled on the Parties' Motion for Entry of Agreed Confidentiality Order, granting and denying it in part, and specifically ruling that the Confidentiality Order, as presented, did not give rise to good cause

for trade secrets protections. (ECF Doc. 78). In fact, the Order, as entered by this Court, does not even state the term "trades secrets" therein. No subsequent Confidentiality Order has been agreed to in the case, and neither Bendix nor any other party has moved for modification at any time.

6.      Being fully aware of this, Bendix chose to omit in its Motion the full terms of the Confidentiality Order explicitly governing the specific categories of information protected thereby, which Hirschbach quotes for reference below:

(a)     information prohibited from disclosure by statute;

(b)     medical information concerning any individual;

(c)     personal identity information;

(d)     income tax returns (including attached schedules and forms, W -2 forms and 1099 forms; or

(e)     personnel or employment records of a person who is not a party to the case.

(ECF Doc. 78).

7.      Bendix refused to quote these categories in full in its Motion because none of them encompass the 18 separate documents Bendix attached to their Motion and attempted to file under seal, which this Court has denied and held in abeyance for want of good cause in support of confidentiality protections. (ECF Docs. 390-391, 396). Given that Bendix has submitted these 18 documents for *in camera* review under seal and seeks the severest sanctions allowable under Rule 37, Hirschbach respectfully declines substantial argument as to what these 18 documents tend to show in context.

8.      Rather, Hirschbach submits that these documents speak for themselves as to the extent of Bendix's deliberate wrongdoing in launching a product that was simply not ready for launch due to a myriad of known, severe defects, and from there, failing not only to fix the

underlying issues at any relevant time, but deliberately altering marketing materials and sales strategies to conceal them. This is not a situation where public disclosure of these documents would aid Bendix's competitors in designing a better collision avoidance system; rather, it would merely inform the public that the Wingman Fusion fails to perform as advertised. While Hirschbach and Mr. Campbell fully recognize that public disclosure of these facts may be embarrassing to Bendix or harmful to its reputation, the law of the Seventh Circuit is clear that such facts are afforded no confidentiality protections in civil litigation.

9.    As such, Bendix moves for sanctions on grounds of violations of the Illinois Trade Secrets Act, under an Agreed Confidentiality Order that this Court has explicitly ruled does not protect trades secrets, and that Bendix made no attempt to modify at any time. The irony of Bendix's Motion is that the standard for imposing such high sanctions requires a showing of willful misconduct or bad faith, where the 18 documents in question strongly implicate Bendix's own bad faith in marketing and selling the product to motor carriers with actual knowledge of defect.

10.    Keeping in mind that the Confidentiality Order affords no trades secrets protections to begin with, Bendix's Motion fails to cite any statute apart from the Trade Secrets Act, fails to argue for the applicability of any of the above, remaining categories of protection information, and fails to establish any bad faith of Hirschbach and Mr. Campbell, let alone a willful violations of the Agreed Confidentiality Order. Akin to its recent Supplemental Brief in support its Motion to file these 18 internal documents under seal, Bendix's argument in support of its Motion for Sanctions is merely a "bare assertion of confidentiality or a desire to keep such information private." (ECF Doc. 391, *quoting Benson v. City of Indianapolis,* No. 24-cv-00839, 2025 WL 3637013, at *1 (S.D. Ind. Dec. 15, 2025).

11.    Reading between the lines, Bendix seeks sanctions for improper, ulterior motives. The sanctions sought are ocean wide, and yet the information and arguments the Motion offers in support are paper thin. Bendix chose to omit that the Confidentiality Order does not protect trades secrets, and then proceeded to file a Motion for Sanctions alleging violations of said Order, with the sole substantive argument that Hirschbach disclosed trades secrets in its Second Amended Complaint in the Northern District case. These are not the actions indicative of a company seeking justice for a willful violation of a confidentiality order, but rather, the actions of a company seeking to keep justice from being done.

12.    In truth, public disclosure of the documents and information Bendix attached to its Motion, and the testimony of its representatives regarding those documents recently obtained, stands to embarrass Bendix and its reputation for obvious reasons. Unfortunately for Bendix, this is precisely the kind of information that the courts in the Seventh Circuit have routinely found to be undeserving of confidentiality protections, and precisely the kind of information relied upon in Hirschbach's Second Amended Complaint in the Northern District action.

13.    As the Motion states correctly, Hirschbach previously moved to challenge Bendix's blanket-designation over the vast majority of its 6000+ page document production to date, and this Court, without ruling on the merits, entered an order holding that the substantive issue of confidentiality was most appropriate for Judge Durkin to handle in discovery in the Northern District case. (ECF Doc. 380). With Bendix choosing to cancel scheduled and noticed depositions pending resolution of their Motion, and with discovery stayed in the Northern District case pending resolution of the pleadings therein, this Court has the opportunity, and

should take the opportunity, to rule on the confidentiality issues now, and with finality. Otherwise, Bendix's actions will effectively stall this case indefinitely.

14.     Overall, Bendix moves for sanctions that require a showing of willful misconduct, for the purpose of keeping its own willful misconduct from public view. Because there are no confidentiality protections over the documents in question, whether at law generally, or with reference to the Confidentiality Order specifically, there is no legitimate violation of the Order to move upon, and Bendix's Motion for Sanctions should be denied accordingly.

## ARGUMENTS

**A.     CONFIDENTIALITY PROTECTIONS DO NOT EXTEND TO THE MATERIAL FACTS SURROUNDING A PARTY'S FRADULENT, EMBARRASING, OR IMPROPER CONDUCT IN THE SEVENTH CIRCUIT.**

15.     As this Court reasoned in its Order on Bendix's Motion to Seal, there is "an extremely well-established and longstanding presumption that '[d]ocuments that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality.'" (ECF 391 at 2). The material allegations of Hirschbach's Second Amended Complaint merely state, with requisite particularity under Rule 9, the nature and extent of Bendix's fraudulent misconduct against Hirschbach and other national motor carriers in deceptively marketing and selling to them a collision avoidance system of which it had actual knowledge of severe performance defects. Per a cursory review of the 18 documents in question, none can be appropriated by a Bendix competitor in order to design a better system; rather, the documents merely show to a reasonable person that Bendix had actual knowledge, in the form of internal communications,

test results, and memoranda, that its product was both incapable of performing to marketed standards and was inferior in performance to its competitors.

16.    It is emphatically the law of the Seventh Circuit that confidentiality and protective orders are not designed to protect the parties from the "harm" that inevitably (and justifiably) arises from public disclosure of fraudulent, embarrassing, and/or improper conduct. *See, e.g., Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Group, Inc*., No. 07 C 2898, 2007 U.S. Dist. LEXIS 91517 (N.D. Ill. Dec. 11, 2007), *citing Culinary Foods v. Raychem Corp.*, 151 F.R.D. 297, 301 (N.D. Ill. 1993). Where trade secrets are not at issue, common sense would indicate that the greater a corporation's motivations for secrecy, the greater the public's need to know." *Culinary Foods*, 151 F.R.D. at 301, *citing Brown & Williamson Tobacco Corp. v. F.T.C,* 710 F.2d 1165, 1180 (6th Cir. 1983). Likewise, "[w]here products are indeed hazardous, information concerning the dangers of the products and the corporations lack of action to prevent the dangers or its attempt to conceal the dangers should not be subject to protection under Rule 26(c)." *Id.*

17.    In *Culinary Foods*, the Northern District reviewed a similar confidentiality order and declined to extend its protection to defendant's internal documents implicating its actual knowledge of dangerous defects in its product, even where it was clear said documents contained commercial information of the defendant. In *Culinary Foods*, the plaintiffs alleged that the defendant's self-regulating pipe heating cable product was unreasonably dangerous and defective and caused a fire. *Culinary Foods*, 151 F.R.D. at 300. The plaintiffs also alleged that the defendant was fully aware of the defect in advance of the fire and argued that the confidentiality order in question should not cover information concerning what the defendant did and did not do in light of its actual knowledge including product design modifications and

changes. *Id.* at 300, 305. Akin to the case at bar, the defendant argued that confidentiality should extend to the "end results" of its products testing as well as its marketing formulae and strategy, on the grounds that disclosure would necessarily reveal the systems, tests, and techniques which give them their competitive advantage. *Id.* at 303.

18.    The Northern District agreed with the plaintiffs on the scope of confidentiality protections: **"[W]e believe that failure to take action with regard to knowledge of dangers and attempts to conceal such dangers are not subject to protection under Rule 26(c)."** *Id.* at 305 (emphasis added). The Court reasoned that although the information regarding the hazards of products and a corporation's knowledge of the information may be embarrassing and incriminating, this alone is insufficient to bar public disclosure. *Id.* at 301, *citing Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108 (3d Cir. 1986).

19.    Further, while the Court reasoned that corporate "formulae, marketing strategy, and other matters whose disclosure would affect defendants with their respective competitors or in conjunction with the day-to-day operation of their business," may generally be entitled to protection, information concerning the defendant's role in concealing or misrepresenting information regarding the dangers of its product was not entitled to any such protection. *Culinary Foods*, 151 F.R.D. at 301. Lastly, the Court held that the defendant had not demonstrated that the end results of its product testing could not be reasonably separated from the systems, tests, and techniques which they claim gave them their competitive advantage, and declined protection over such information accordingly. *Id.* at 303.

20.    Numerous other courts in the Seventh Circuit, decided both before and after *Culinary Foods*, have reasoned similarly in declining to extend confidentiality protection to information and documents implicating defendants' actual knowledge of product defect. *See*

*Wauchop v. Domino's Pizza, Inc.,* 138 F.R.D. 539 (N.D. Ind. 1991) (rejecting proposed protective order with blanket non-dissemination provision over documents produced in discovery); *Nat'l* Council, 2007 U.S. Dist. LEXIS 91517 at *13 (rejecting proposed protective order prohibiting disclosure of documents that would "reasonably cause harm to the business operations of the disclosing party").

21.     Akin to the prevailing plaintiffs in *Culinary Foods*, the 18 documents in question implicate Bendix's actual knowledge of dangerous defects in the Wingman Fusion System, including the end results of their product testing, materials used to coach sales representatives as to its performance limitations in an attempt to conceal such defects from customers, and internal discussions of competitor comparisons identifying feasible alternative designs. Because there is no confidentiality protection in the Seventh Circuit over such information, the Motion for Sanctions must be denied. "Anything interfering with the sunlight's power as a "disinfectant" must be carefully restricted. *Wilk v. American Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980)." *Andrew Corp. v. Rossi*, 180 F.R.D. 338, 342 (N.D. Ill. 1998).

**B.     THE EXPLICIT TERMS OF THE AGREED CONFIDENTIALITY ORDER AFFORD NO PROTECTION WHATSOEVER TO THE DOCUMENTS AND TESTIMONY RAISED IN BENDIX'S MOTION.**

22.     Nor are these 18 documents afforded protection under the terms of the Confidentiality Order itself. First, the Court has made clear that the Order, in its current and adopted form, does not protect trade secrets (ECF 78), and the sole argument Bendix advances in its Motion is on trades secrets grounds under the Illinois Trades Secrets Act. In fact, the Confidentiality Order, as entered by this Court, does not even use the term "trades secrets" whatsoever. In essence, Bendix is advancing an argument that Hirschbach violated a

Confidentiality Order by disclosing Bendix's purported trades secrets, where the terms of the Order in question do not state the term "trades secrets." This argument is self-defeating, and the Motion should be denied on these grounds alone.

23.    Second, corporate documents indicating (1) actual company knowledge of the dangerous propensities of its product, (2) the advantages of its competitors' products, and/or (3) how its sales representatives can conceal the dangerous propensities of its product from prospective customers, are neither worthy of confidentiality protections to begin with, nor encompassed by the remaining protected categories of personal medical information, personal identity information, tax returns or forms, or personnel/employment records. The same would logically apply to deposition testimony of Bendix employees and company representatives relating to the substance of those documents.

24.    Bendix seeks the severest of sanctions, including dismissal of this case, based on the terms of a Confidentiality Order it refuses to quote in full in its Motion, because those terms simply do not afford the level of secrecy Bendix subjectively desires over potential future trial exbibits in this case. This theme is further evident in its threadbare Motion to File Under Seal which this Court currently holds in abeyance. Given the presumption against secrecy of discovery in civil litigation, Bendix asks for very much in terms of confidentiality and punitive action against Hirschbach but provides objectively very little support in either Motion. As such, the Confidentiality Order, which governs this Court's determination of sanctions, affords no protection to the 18 documents in question, and the Motion for Sanctions should be denied. *See Culinary Foods*, 151 F.R.D. at 305.

**C.      BENDIX HAS OPENED THE DOOR FOR THE COURT TO NOW RULE ON THE SUBSTANCE AND MERITS OF HIRSCHBACH'S MOTION FOR DE-DESIGNATION.**

25.      "As a general proposition, pre-trial discovery must take place in the [sic] public unless compelling reasons exist for denying the public access to the proceedings." *Grady*, 594 F.2d at 596. This presumption should operate with all the more force when litigants seek to use discovery in aid of collateral litigation on similar issues, for in addition to the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process. *Id.*

26.      Hirschbach previously moved to de-designate Bendix's blanket-assertion of confidentiality over the vast majority of its discovery production of 6,000+ pages to date, relying on the same facts and law as made in this Response. On March 27, 2026, this Court technically denied Hirschbach's Motion for De-Designation, however, did not make any findings of fact or rulings on the merits in its order, but rather, held that the issue was most appropriate for Judge Durkin to handle in the Northern District case. (ECF Doc. 380).

27.      With Bendix choosing to cancel noticed depositions of its remaining representatives including its Rule 30(b)(6) witness, and with discovery stayed in the Northern District case pending resolution of the pleadings, it is Hirschbach's position that this Court should weigh the merits of de-designation not only over the 18 documents submitted with Bendix's Motion, but also for Bendix's blanket-designation of its entire production generally. Bendix has provided these very documents to the Court under seal for *in camera* review and, therefore, this Court is in the ideal position to review those documents and make a firm confidentiality determination with respect to each of them.

28.    In this fashion, the Parties will have clarity and finality as to the issue of confidentiality of discovery obtained to date and remaining discovery to be completed, which Bendix clearly has a strong interest by virtue of its Motion. This demonstrates that the true issue at hand is determining the scope of confidentiality protections over Bendix's discovery production generally and certainly not for determining sanctions against Hirschbach and Mr. Campbell, because Bendix had the opportunity, over years of litigation, to simply move to modify the Confidentiality Order to protect trades secrets, and the consequences of that failure must fall on Bendix, not Hirschbach. Therefore, the Motion for Sanctions should further be denied on these grounds, and this Court should ultimately weigh the scope of confidentiality over the 18 documents in question specifically, as well as Bendix's production generally, as part of its order denying the same.

**CONCLUSION**

29.    With the above context in mind, Bendix's Motion for Sanctions can be likened to a desperate attempt to punish Hirschbach for the mere act of standing on its civil rights as an injured motor-carrier customer, which inevitably resulted in the public disclosure of Bendix's decade-long course of wrongful conduct. Rather than attempt to litigate this case on its facts and merits, Bendix has chosen to further delay the litigation of this case, with a sideshow Motion for Sanctions in which it chose not to quote the language of the very Confidentiality Order it moves upon.

30.    Having already taken issue with Bendix's Motion for Sealing of the documents and testimony in question by virtue of denying it at this time and holding it in abeyance, this Court should deny the Motion for Sanctions outright.

31. Ultimately, Bendix developed a fraudulent scheme to deliberately market and sell the Fusion system as the safest and most powerful forward crash warning system available to commercial motor carriers like Hirschbach.

32. Bendix marketed the system as a safety system to prevent or mitigate rear-end crashes into stopped or slow-moving vehicles at highway speeds while knowing the Fusion system would not perform above 25 miles per hour.

33. Bendix understood when making these false statements that the very crashes Bendix claimed the system would prevent or mitigate often resulted in catastrophic or fatal injuries to both the struck vehicle and the operator of the commercial vehicle.

34. Bendix now asks this Court's aid in furthering its concealment of this fraudulent scheme that continues to jeopardize the lives and safety of the motoring public while exposing good commercial vehicle fleet operators like Hirschbach to ruinous financial liability. This Court should reject Bendix's invitation to assist in its cover-up. "Where products are indeed hazardous, information concerning the dangers of the products and the corporations lack of action to prevent the dangers or its attempt to conceal the dangers should not be subject to protection under Rule 26(c)." *Culinary Foods v. Raychem Corp.*, 151 F.R.D. 297, 301 (N.D. Ill. 1993).

35. While the applicable protective order does not embrace trade secrets, Bendix cannot demonstrate that a fraudulent scheme to sell a safety system to commercial vehicle operators while concealing the defective nature of the system falls within the definition of a trade secret even if the protective order covered this topic.

36. Bendix is simply embarrassed by the revelations of its fraud scheme that resulted in its market dominance in this space. Embarrassment and incrimination also provide no

grounds to grant Bendix's motion. This is also no reason to grant Bendix's motion. "Protective orders are not designed to protect the parties from "harm" that results from public disclosure of embarrassing or improper conduct." *Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Grp., Inc.*, No. 07 C 2898, 2007 U.S. Dist. LEXIS 91517, at *13 (N.D. Ill. Dec. 11, 2007). Fraud and Deceit are not business models protectable as trade secrets. Therefore, Bendix's Motion for Sanctions should be denied, and this Court should firmly rule on the issue of confidentiality over the 18 documents in question as part of its Order.

WHEREFORE, the Defendants/Third-Party Plaintiffs, HIRSCHBACH MOTOR LINES INC. and ERIC JEROME CAMPBELL, SR., respectfully request that this Court deny Bendix's Rule 37 Motion for Sanctions, with prejudice, determine the scope of confidentiality protections with respect to the 18 documents filed under seal as well as Bendix's discovery production generally, and for such further relief as this Court deems appropriate.

HIRSCHBACH MOTOR LINES INC and
ERIC JEROME CAMPBELL, SR.


By:___/s/ Matthew S. Hefflefinger_____
CHARTWELL LAW
Matthew S. Hefflefinger - ARDC # 6201281


By:___/s/ Devin M. Taseff_____
CHARTWELL LAW
Devin M. Taseff – ARDC # 6333448

Matthew S. Hefflefinger
Devin Taseff
CHARTWELL LAW
7707 N. Knoxville Avenue
Suite 201-A
Peoria, Illinois 61614
Telephone: 309-225-5560
Primary E-service: eservicePeoria@chartwelllaw.com
Secondary E-service: mhefflefinger@chartwelllaw.com; csmith@chartwelllaw.com
Secondary E-service: dtaseff@chartwelllaw.com; dbiesterfeld@chartwelllaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 20, 2025, I electronically filed the foregoing **<u>DEFENDANTS/THIRD-PARTY PLAINTIFFS, HIRSCHBACH MOTOR LINES AND ERIC JEROME CAMPBELL, SR.'S RESPONSE TO THIRD-PARTY DEFENDANT, BENDIX COMMERCIAL VEHICLE SYSTEMS, LLC'S RULE 37(B) MOTION FOR SANCTIONS</u>** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

    /s/ Donna Biesterfeld
    Assistant to Devin Taseff